Argued and submitted January 8, Oregon Laws 1991, chapter 823, section 1, is declared unconstitutional under Article I, section 21, of the Oregon Constitution insofar as it affects retirement benefits accrued or accruing for work performed on or before September 28, 1991; the constitutional validity of Oregon Laws 1991, chapter 823, section 3, is sustained August 6, 1992

William G. HUGHES
and Charles L. Plummer,
*Petitioners,*

*v.*

STATE OF OREGON,
Governor Barbara Roberts and
Oregon Department of Revenue,
*Respondents.*

(SC S38544 (Control))

OREGON PUBLIC EMPLOYEES UNION,
Dawn Morgan, Velma K. Mullaley,
Oregon School Employees' Association,
Mary Slawosky, Retired Oregon School Employees
and Pat Guest,
*Petitioners,*

*v.*

STATE OF OREGON
and Oregon Department of Revenue,
*Respondents.*

(SC S38549)

George BRUNE,
Jeffrey C. Davis, John E. Davis, Betty Drew,
Bob Frazier, Ann Logan, Grant McElroy,
Thomas P. Murphy, Judith Norton, Linda Pesanti,
Marylu Philip, Keith Wolford,
Oregon Education Association,
Oregon Association of Classified Employees,
American Federation of State, County &
Municipal Employees, Council 75,
Oregon State Fire Fighters,
Oregon Nurses Association and
Confederation of Oregon School Administrators,
*Petitioners,*

*v.*

STATE OF OREGON,
*Respondent.*

(SC S38700)

PORTLAND POLICE ASSOCIATION,
Leo Painton, Oregon Council of Police Associations
and Pieter Van Dyke,
*Petitioners,*

*v.*

STATE OF OREGON
and Department of Revenue,
*Respondents.*

(SC S38701)
(Cases Consolidated)
838 P2d 1018

John R. Faust, Jr., of Schwabe, Williamson & Wyatt, Portland, argued the cause and filed the briefs for petitioners William G. Hughes et al.

James S. Coon, of Sherwood & Coon, P.C., Portland argued the cause and filed the briefs for petitioners Oregon Public Employees Union et al.

Gregory A. Hartman, of Bennett & Hartman, Portland, argued the cause and filed the briefs for petitioners George Brune et al. With him on the reply brief was Monica A. Smith, Portland.

William B. Aitchison, of Aitchison, Hoag, Vick & Tarantino, Portland, filed the brief for petitioners Portland Police Association et al.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Rives Kistler, Assistant Attorney General, Salem.

VAN HOOMISSEN, J.

Fadeley, J., concurred in part and dissented in part and filed an opinion.

Peterson, J., dissented and filed an opinion.

## VAN HOOMISSEN, J.

### INTRODUCTION

The legislature has conferred special jurisdiction on this court, on the timely filing of a petition for review by an interested party, to evaluate the constitutionality of Oregon Laws 1991, chapter 823. Or Laws 1991, ch 796, § 15.[1] Chapter 823, in part, subjects benefits paid under the Public Employes' Retirement System (PERS), ORS 237.001 to 237.315, to state income taxation.[2]

Petitioners, undeniably interested parties,[3] have timely filed petitions for review challenging, in various particulars, the constitutionality of Oregon Laws 1991, chapter

---

[1] The jurisdictional provision governing this case provides:

"*Jurisdiction to determine whether the taxation of retirement benefits received by retired members of the Public Employes' Retirement System and other retirement systems established by this state or political subdivisions of this state is in violation of any constitutional provision, including but not limited to violation of contract rights of retired members under section 21, Article I of the Oregon Constitution, or clause 1, section 10, Article I, Constitution of the United States, is conferred upon the Supreme Court. If the Supreme Court determines that such taxation violates constitutional provisions, the Supreme Court may, in its discretion, fashion an appropriate remedy.*" Or Laws 1991, ch 796, § 15(1).

[2] All of the justices of this court are members of PERS. Thus, each justice has a financial interest in the outcome of this case. Normally, when a judge has a financial interest, no matter how small, in the outcome of a case, that judge should recuse himself or herself. Code of Judicial Conduct, Canon 3C(1)(c). This court, however, is the only one authorized to consider the claims raised in this case. Or Laws 1991, ch 796, § 15(1). Thus, the "rule of necessity" authorizes the justices of this court to adjudicate those claims. As stated in *Woodward v. Pearson*, 165 Or 40, 58, 103 P2d 737 (1940):

"*Our interest as taxpayers attends in every case where a fellow taxpayer seeks to enjoin the payment of money derived from taxation; but by reason of the fact that no tribunal is available unattended by the same disqualifying interest wherein the issues of such a case may be determined, this court and other courts composed of tax-paying judges have been compelled to hear and decide such issues.*"

*See Evans v. Gore*, 253 US 245, 247-48, 40 S Ct 550, 64 L Ed 887 (1920) (deciding that it is appropriate for the Supreme Court of the United States to decide a case involving the ability of Congress to tax the compensation of federal judges).

[3] Petitioners in this case are present and retired public employes (or their representatives) of the state and its political subdivisions. The primary respondent is the State of Oregon. Throughout this opinion, we refer to the employer-employee relationship of "the state" and "its employes." Those references are merely convenient terms for all public employers, whether the employer be the state or one of its political subdivisions, and their respective public employes who are parties to this case.

823, sections 1 and 3.[4] After considering those challenges, we hold that petitioners have a contract with the state[5] to receive PERS retirement benefits free from state and local taxation as provided by *former* ORS 237.201 (1989)[6] (*amended by* Or Laws 1991, ch 823, § 1); and that Oregon Laws 1991, chapter 823, section 1, impairs an obligation of that contract in violation of Article I, section 21, of the Oregon Constitution and, therefore, is a nullity as it relates to PERS retirement benefits accrued or accruing for work performed before the effective date of that 1991 legislation. We further hold that Oregon Laws 1991, chapter 823, section 3, breaches petitioners' PERS contract insofar as it subjects to state and local taxation PERS retirement benefits accrued or accruing for work performed before the effective date of that 1991 legislation, rather than impairing any of the obligations of that contract, and therefore section 3 does not violate the Contract Clauses of either the Oregon or the United States Constitutions; moreover, section 3 does not violate either the Oregon or United States Constitutions in any of the other respects argued by petitioners.

## FACTS

### A.   *Statutory Background*

In 1945, the legislature enacted the Public Employes' Retirement Act (PERA). OCLA § 90-701 to 90-723 (Supp 1947) (Or Laws 1945, ch 401). From its inception, benefits paid under the PERA explicitly were exempt from all state and local taxation. The statute providing the tax exemption stated:

"The right of a person to a pension, an annuity, or a retirement allowance, to the return of contribution, the pension, annuity, or retirement allowance itself, any optional

---

[4] All relevant statutes and constitutional provisions are set out and discussed below.

[5] Our references to petitioners' "contract with the state" or their "PERS contract" in this opinion are merely shorthand terms for the various groups of petitioners, who work for different levels of government, and the contracts they each have with their respective PERS participating employers.

[6] *Former* ORS 237.201 (1989), referred to throughout this opinion was the relevant statutory provision in force immediately before the enactment of Oregon Laws 1991, chapter 823.

benefit or death benefit, or any other right accrued or accruing to any person under the provisions of this act, and the money in the various funds created by the act, *shall be exempt from all state, county, and municipal taxes* and shall not be subject to execution, garnishment, attachment or any other process or the operation of any bankruptcy or insolvency law, and shall be unassignable." OCLA 90-723 (Or Laws 1945, ch 401, § 23) (emphasis added).

That statute, later reenacted as *former* ORS 237.201 (1953) (at least in form),[7] remained virtually unchanged for twenty-four years. Then, in 1969, the legislature amended the exemption statute to provide expressly that it applied to all state and local taxes "heretofore or hereafter imposed." Or Laws 1969, ch 640, § 13. After the 1969 amendment, *former* ORS 237.201 (1969) provided:

"The right of a person to a pension, an annuity, or a retirement allowance, or to the return of contribution, the pension, annuity or retirement allowance itself, any optional benefit or death benefit, or any other right accrued or accruing to any person under the provisions of ORS 237.001 to 237.315, and the money in the various funds created by ORS 237.271 and 237.281, *shall be exempt from all state, county and municipal taxes heretofore or hereafter imposed*, shall not be subject to execution, garnishment, attachment or any

---

[7] Strictly speaking, and contrary to the parties' assumptions, the tax exemption enacted in 1945 is not the statute presently under consideration. The tax exemption of the Public Employes' Retirement Act of 1945, Or Laws 1945, ch 401, § 23, was set forth at OCLA 90-723. In 1953, the legislature repealed all preexisting statutes and enacted the Oregon Revised Statutes. Or Laws 1953, ch 3. At that time, OCLA 90-723 was repealed and reenacted as *former* ORS 237.170 (1953). *See* Oregon Revised Statutes, Prior Legislative History 220 (1953) (noting OCLA 90-723 as reenacted at ORS 237.170). In the legislature's *general* repeal and reenactment of statutes in 1953, it did not intend to make any substantive changes in the law. ORS 174.550; *Eckles v. State of Oregon,* 306 Or 380, 393 n 13, 760 P2d 846 (1988), *appeal dismissed* 490 US 1032 (1989). *Former* ORS 237.170, however, was repealed shortly after it was reenacted. Or Laws 1953, ch 180, § 18. The same was true for the remainder of the 1945 Act. Or Laws 1953, ch 180, § 2. That Act was repealed so that public employees could participate in the federal social security program. Or Laws 1953, ch 180, § 1. That federal program authorized state employees to participate only if no state retirement program existed at the time the state took advantage of the federal benefits. Special Committee on Retirement, Report to the Joint Ways and Means Committee 1 (1953). Apparently, later reenactment of a state retirement program was not prohibited. Thus, *former* ORS 237.201 (1953), the tax exemption now under consideration (as amended through 1989), subsequently was enacted as part of the Public Employes' Retirement Act of 1953. Or Laws 1953, ch 200, § 22. As we discuss below, the 1953 legislature may have intended the 1953 Act to be different in substance from the 1945 Act. Here, however, we note only that the language of OCLA 90-723 was virtually identical to *former* ORS 237.201 (1953).

other process or the operation of any bankruptcy or insolvency law heretofore or hereafter existing or enacted, and shall be unassignable." (Emphasis added.)

Over the next several years, various amendments were made to the statute. By 1989, immediately before the amendments at issue here, *former* ORS 237.201 (1989) provided:

"The right of a person to a pension, an annuity or a retirement allowance, to the return of contribution, the pension, annuity or retirement allowance itself, any optional benefit or death benefit, or any other right accrued or accruing to any person under the provisions of ORS 237.001 to 237.315, and the money in the various funds created by ORS 237.271 and 237.281, *shall be exempt from* garnishment and *all state, county and municipal taxes heretofore or hereafter imposed*, except as provided under ORS chapter 118, shall not be subject to execution, garnishment, attachment or any other process or to the operation of any bankruptcy or insolvency law heretofore or hereafter existing or enacted except for execution or other process upon a support obligation or an order or notice entered pursuant to ORS 25.050, 25.060, 25.310, 25.350, 25.360, 25.450, 416.445 or 419.515, and shall be unassignable." (Emphasis added.)

One other statute, *former* ORS 316.680(1)(d) (1989) (*repealed by* Or Laws 1991, ch 823, § 3), a tax exemption in the state income tax law, also is significant to this case. It provided in part:

"There shall be subtracted from federal taxable income:[8]

"* * * * *

"(d)  The amount of any payments received from the Public Employes' Retirement Fund under ORS 237.001 to 237.315 which are exempt from state taxation under ORS 237.201."

Thus, as of 1989, that statute made the PERS tax exemption, then provided for in *former* ORS 237.201 (1989), a part of the state income tax law.

---

[8] Oregon's system of personal income tax measures state taxable income by reference to federal taxable income. ORS 316.007. Therefore, tax exemptions specific to Oregon are based on adjustments to federal taxable income.

## B. *1991 Legislative Amendments*

In 1989, the Supreme Court of the United States decided *Davis v. Michigan Dept. of Treasury*, 489 US 803, 109 S Ct 1500, 103 L Ed 2d 891 (1989).[9] In *Davis*, the Supreme Court held that if a state exempts pension benefits paid by state and local governments from state income taxes, without similarly exempting pension benefits paid by the federal government, then that state violates statutory and constitutional principles of intergovernmental tax immunity. 489 US at 817; *accord Barker v. Kansas*, ___ US ___, 112 S Ct 1619, 118 L Ed 2d 243 (1992) (states may not tax military retirement benefits while exempting the benefits of retired state and local government workers; such differential treatment violates the constitutional doctrine of intergovernmental tax immunity codified in the non-discrimination mandate of 4 USC § 111). Consequently, the Court held that states whose statutes provide for such disparate tax treatment are required either to tax state and federal pensions alike or to exempt them alike. 489 US at 817-18.

When the Supreme Court issued its decision in *Davis*, Oregon taxed federal pension benefits as personal income, but, pursuant to *former* ORS 237.201 (1989) and *former* ORS 316.680(1)(d) (1989), exempted PERS retirement benefits from that same tax. Subsequently, this court held that Oregon's taxation scheme violated constitutional principles of intergovernmental tax immunity. *Ragsdale v. Dept. of Rev.*, 312 Or 529, 542, 823 P2d 971 (1992).[10]

To comply with *Davis*, the 1991 legislature decided to subject PERS retirement benefits to state personal income taxation, rather than to exempt federal pension benefits from such taxation. Oregon Laws 1991, chapter 823, is the result of those compliance efforts.

---

[9] The Supreme Court of the United States recently has allowed *certiorari* in *Harper v. Virginia Dept. of Taxation*, 242 Va 322, 410 SE2d 629 (1991), *cert granted* ___ US ___, 112 S Ct 1934, 118 L Ed 2d 541, *order amended* ___ US ___, 112 S Ct 2298, 119 L Ed 2d 222 (1992), to decide whether *Davis v. Michigan Dept. of Treasury*, 489 US 803, 109 S Ct 1500, 103 L Ed 2d 891 (1989), is retroactive.

[10] The 1989 legislature attempted to comply with *Davis* when it passed HB 3508 (Oregon Laws 1989, chapter 906). Sections 2 and 3 of that bill were identical, respectively, to sections 1 and 3 of Oregon Laws 1991, chapter 823, the provisions presently under consideration. Before HB 3508 became law, however, it was referred to the voters, who rejected it.

Sections 1 and 3 are the operative sections of Oregon Laws 1991, chapter 823. Those sections are the focus of the dispute in this case.

Section 1 amended *former* ORS 237.201 (1989) by making that statute subsection (1) of ORS 237.201 and by adding a second subsection to ORS 237.201 making the tax exemption in ORS 237.201(1) inapplicable to state personal income taxation. As amended, therefore, ORS 237.201 provides:

> *"(1)* The right of a person to a pension, an annuity or a retirement allowance, to the return of contribution, the pension, annuity or retirement allowance itself, any optional benefit or death benefit, or any other right accrued or accruing to any person under the provisions of ORS 237.001 to 237.315, and the money in the various funds created by ORS 237.271 and 237.281, shall be exempt from garnishment and all state, county and municipal taxes heretofore or hereafter imposed, except as provided under ORS chapter 118, shall not be subject to execution, garnishment, attachment or any other process or to the operation of any bankruptcy or insolvency law heretofore or hereafter existing or enacted except for execution or other process upon a support obligation or an order or notice entered pursuant to ORS 25.050, 25.060, 25.310, 25.350, 25.360, 25.450, 416.445 or 419.515, and shall be unassignable.

> *"(2) Subsection (1) of this section does not apply to state personal income taxation of amounts paid under ORS 237.001 to 237.315."* (Amendments emphasized.)

Section 3, in relevant part, repealed *former* ORS 316.680(1)(d) (1989), the statute that had made the tax exemption for PERS retirement benefits, previously provided for in *former* ORS 237.201 (1989), a part of the state income tax law.

## CONTENTIONS OF THE PARTIES

Petitioners first argue that PERS, ORS 237.001 to 237.315, constitutes an offer by the state for a unilateral contract, which a person may accept by accepting employment with the state or one of its political subdivisions. Petitioners argue that their acceptance of that offer by taking such employment creates a binding contract with their respective employers to provide PERS retirement benefits

pursuant to the terms of the offer. Next, petitioners argue that *former* ORS 237.201 (1989), the exemption from all state and local taxes set forth in PERS, is a term of their contract with the state. Finally, petitioners argue that sections 1 and 3 of Oregon Laws 1991, chapter 823, which permit and result in state income taxation of PERS retirement benefits, impair the state's contractual obligation not to tax PERS retirement benefits; that impairment, petitioners argue, is a violation of Article I, section 21, of the Oregon Constitution,[11] and Article I, section 10, clause 1, of the Constitution of the United States.[12]

Alternatively, petitioners argue that taxation of PERS retirement benefits, as allowed by Oregon Laws 1991, chapter 823, is a governmental taking of their property and that the state has not provided just compensation for that taking, which constitutes a violation of Article I, section 18, of the Oregon Constitution,[13] and the Fifth and Fourteenth Amendments to the United States Constitution.[14]

The state concedes that PERS is a contract between the state and its employees. The state argues, however, that the tax exemption allowed by *former* ORS 237.201 (1989) is not a term of that contract. The state bases its assertion on

---

[11] Article I, section 21, of the Oregon Constitution, provides in part:

"No * * * law impairing the obligation of contracts shall ever be passed * * *."

[12] Article I, section 10, clause 1, of the Constitution of the United States, provides in part:

"No State shall * * * pass any * * * Law impairing the Obligation of Contracts * * *."

[13] Article I, section 18, of the Oregon Constitution, provides in part:

"Private property shall not be taken for public use * * * without just compensation; nor except in the case of the state, without such compensation first assessed and tendered * * *."

[14] The Fifth Amendment to the Constitution of the United States, provides in part:

"No person shall be * * * deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

The Just Compensation Clause of the Fifth Amendment applies to the states via the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Williamson Planning Comm'n v. Hamilton Bank*, 473 US 172, 175 n 1, 105 S Ct 3108, 87 L Ed 2d 126 (1985) (*citing Chicago, B. & Q. R. Co. v. Chicago*, 166 US 226, 241, 17 S Ct 581, 41 L Ed 979 (1897)).

two grounds: (1) the state may not contract away its sovereign power of taxation; and (2) the specific provision at issue, *former* ORS 237.201 (1989), was not intended to be a promissory or contractual statute. Alternatively, the state argues that, if this court holds that the tax exemption allowed by *former* ORS 237.201 (1989) is a term of the PERS contract between the state and its employees, then both sections 1 and 3 of Oregon Laws 1991, chapter 823, are merely a breach of that contract rather than an impairment of any of its obligations.

As to petitioners' taking claims, the state argues that those arguments are premature because petitioners have not sought — and thus have not been denied — just compensation.

## FIRST THINGS FIRST

Petitioners' arguments regarding Oregon Laws 1991, chapter 823, implicate the constitutions of both Oregon and the United States. Before considering any questions under the federal constitution, however, we first address petitioners' arguments under the Oregon Constitution. *See Stelts v. State of Oregon*, 299 Or 252, 257, 701 P2d 1047 (1985) (questions of state law shall be considered and disposed of before reaching a claim that this state's law falls short of a standard imposed by the federal constitution on the states); *State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (same).

## STATE CONTRACT CLAUSE

We first consider petitioners' arguments under the Contract Clause of the Oregon Constitution.

### A. *The State's Ability to Make Contracts*

Article I, section 21, of the Oregon Constitution, provides in part:

"No * * * law impairing the obligation of contracts shall ever be passed * * *."

In *Eckles v. State of Oregon*, 306 Or 380, 390, 760 P2d 846 (1988), *appeal dismissed* 490 US 1032 (1989), this court concluded that Article I, section 21, applies to contracts made by the state as well as to contracts between private

parties.[15] Although the idea that the Contract Clause applies to state contracts is not novel, *see Campbell v. Aldrich*, 159 Or 208, 213-14, 79 P2d 257, *appeal dismissed* 305 US 559 (1938) (applying Contract Clause to public contract, though not distinguishing between the state and federal Contract Clauses), and *O'Harra v. The City of Portland*, 3 Or 525, 526-27 (1869) (same), it is significant. Its significance lies in the fact that, if the appropriate contractual conditions are met, one legislature may bind a succeeding legislature to a particular course of action. *Fletcher v. Peck*, 10 US (6 Cranch) 87, 135, 3 L Ed 162 (1810) ("The principle asserted is, that one Legislature is competent to repeal any act which a former Legislature was competent to pass, and that one Legislature cannot abridge the powers of the succeeding Legislature. The correctness of this principle, so far as respects general legislation, can never be controverted. But if an act be done under a law, a succeeding Legislature cannot undo it. * * * When, then, a law is in its nature a contract, a repeal of the law cannot divest those rights[.]'").

■    Whether the state is alleged to be a party to a contract in dispute or not, however, the proper analysis to determine whether a law of the state violates the Contract Clause of

---

[15] The conclusion that the Contract Clause of the Oregon Constitution applies to both public and private contracts follows from the origins of that clause. In *Eckles*, the court discussed those origins, stating:

"Unlike many of the provisions in Article I of the Oregon Constitution, the provision in section 21 against impairing the obligation of contracts has its ultimate source not in the early state and colonial constitutions but in the Constitution of the United States, Article I, section 10, clause 1, and the Northwest Ordinance of 1787. * * *

"* * * * *

"* * * When Article I, section 21, was adopted in 1859, language very similar to that of the federal constitutional provision was used * * *.

"We infer from the similarity of language and from the parallels drawn between the constitutional provisions by the predecessor of this court that the framers of the Oregon Constitution intended to incorporate the substance of the federal provision, as it was then interpreted by the Supreme Court of the United States, into the Oregon Constitution, though not necessarily every case decided under the federal provision. Subsequent Supreme Court of the United States decisions, of course, do not control the interpretation of section 21, although those decisions may shed light on the early history of the federal provision, and thereby on the Oregon provision." 306 Or at 389-90 (citations and footnotes omitted).

Thus, the substance of pre-1859 cases of the Supreme Court of the United States plays a significant role in our interpretation of the Oregon Contract Clause.

Article I, section 21, requires two steps: First, it must be determined whether a contract exists to which the person asserting an impairment is a party; and, second, it must be determined whether a law of this state has impaired an obligation of that contract. General principles of contract law normally will govern both inquiries, even where the state is alleged to be a party to the contract at issue. *Eckles v. State of Oregon, supra*, 306 Or at 396-97.

■　　In cases where the state is alleged to be a party to the contract, however, courts have developed a number of additional rules. In *Eckles*, this court detailed the nature and origins of those rules. *See id.* at 397-99 (discussing rules). Briefly, those rules are: (1) a state contract will not be inferred from legislation that does not unambiguously express an intention to create a contract; (2) the Contract Clause does not limit the state's power of eminent domain; and (3) the state may not contract away its "police power."[16] Those rules are not necessarily exhaustive of possible limitations on state contracts under Article I, section 21, but any further rules of this nature "must be found within the language or history of Article I, section 21, itself." *Eckles v. State of Oregon, supra*, 306 Or at 399.

■　　In this case, the state asks that we recognize one additional rule controlling the interpretation of state contracts under Article I, section 21, to wit: that the state may not contract away its sovereign power to tax. Although sound policy reasons may support such a rule, we conclude that it is not "found within the language or history of Article I, section 21, itself." 306 Or at 399. In fact, as the following cases demonstrate, the opposite rule is a part of the substance of the federal Contract Clause that was incorporated into Article I, section 21, on its adoption in 1859. *See supra* note 15 (discussing origins of Article I, section 21).

---

[16] "[T]his court has emphasized in recent years that the 'police power' is indistinguishable from the state's inherent power to enact laws and regulations[.]" *Eckles v. State of Oregon, supra*, 306 Or at 399. Thus, the application of the rule that a state may not contract away its "police power" under Article I, section 21, of the Oregon Constitution, does not embrace the "balancing" analysis currently employed by the Supreme Court of the United States in its analysis of the Contract Clause in Article I, section 10, clause 1, of the federal constitution. 306 Or at 399.

In *New Jersey v. Wilson*, 11 US (7 Cranch) 164, 3 L Ed 303 (1812), the Supreme Court of the United States, speaking through Chief Justice Marshall, held that, when the State of New Jersey made a grant of land with a promise that the land would be exempt from taxation, a repeal of that tax exemption violated the federal Contract Clause.[17] Likewise, in *Gordon v. The Appeal Tax Court*, 44 US (3 How) 133, 11 L Ed 529 (1845), the Supreme Court made a similar holding regarding a state's ability to repeal a tax exemption that it had granted in a corporate charter to a bank and its stockholders. Most significantly, however, in *The Piqua Branch of the State Bank of Ohio v. Knoop*, 57 US (16 How) 369, 14 L Ed 977 (1853), a case factually similar to *Gordon*,[18] the Court expressly considered and rejected the argument that a state could not enter into a contract to provide a tax exemption. The Court stated:

> "The idea that a state, by exempting from taxation certain property, parts with a portion of its sovereignty, is of modern growth; and so is the argument that if a state may part with this in one instance it may in every other, so as to divest itself of the sovereign power of taxation. Such an argument would be as strong and as conclusive against the exercise of the taxing power. For if the Legislature may levy a tax upon property, they may absorb the entire property of the tax payer. The same may be said of every power where there is an exercise of judgment.

> "* * * * *

> "The assumption that a State, in exempting certain property from taxation, relinquishes a part of its sovereign power, is unfounded. The taxing power may select its objects of taxation; and this is generally regulated by the amount necessary to answer the purposes of the State. Now, the exemption of property from taxation is a question of policy and not of power." *The Piqua Branch of the State Bank of Ohio v. Knoop, supra*, 57 US at 383-84.

---

[17] The Court's conclusion that a state had validly contracted to provide an exemption from taxation was made early on in the Court's developing analysis of the federal Contract Clause. *New Jersey v. Wilson*, 11 US (7 Cranch) 164, 3 L Ed 303 (1812), was only the second case in which the Court interpreted that clause. The first was *Fletcher v. Peck*, 10 US (6 Cranch) 187, 3 L Ed 62 (1810).

[18] The facts of *The Piqua Branch of the State Bank of Ohio v. Knoop*, 57 US (16 How) 369, 14 L Ed 977 (1853), are discussed below.

The principles of *Piqua* were reaffirmed in *Dodge v. Woolsey*, 59 US (18 How) 331, 360-61, 15 L Ed 401 (1855).

In evaluating this question, Professor Cooley, in his treatise on constitutional limitations, stated:

> "Perhaps the most interesting question which arises in this discussion is, whether it is competent for the legislature to so bind up its own hands by a grant as to preclude it from exercising for the future any of the essential attributes of sovereignty in regard to any of the subjects within its jurisdiction; whether, for instance, it can agree that it will not exercise the power of taxation[.] * * *

> "So far as the power of taxation is concerned, it has been so often decided by the Supreme Court of the United States, though not without remonstrance on the part of State courts, that an agreement by a State, for consideration received or supposed to be received, that certain property, rights, or franchises shall be exempt from taxation, or to be taxed at a certain agreed rate, is a contract protected by the Constitution, that the question can no longer be considered an open one." T. Cooley, Constitutional Limitations 280-81 (1868) (footnotes omitted).

*Accord Home of the Friendless v. Rouse*, 75 US (8 Wall) 430, 438, 19 L Ed 495 (1869) ("It is settled by repeated adjudications of this court, that a State may by contract based on a consideration, exempt the property of an individual or corporation from taxation, either for a specified period or permanently."); *see also* Hale, *The Supreme Court and the Contract Clause: II*, 57 Harv L Rev 621, 640-54 (1944) (discussing ability of states to contract away their power to tax).[19] In sum, if the appropriate contractual conditions have been met, the state may bind itself to provide an exemption from taxation.[20]

---

[19] Although these authorities post-date the adoption of the Oregon Constitution in 1859, they accurately assess the treatment of the subject of a state's ability to contract away its power to tax by the Supreme Court of the United States before that date.

[20] Justice Peterson's dissent cites *Hogg v. MacKay*, 23 Or 339, 341, 31 P 779 (1893), as proposing a different rule, *i.e.*, that a state may not validly make a contract to provide a tax exemption. That case, however, neither discussed nor considered the Contract Clause of either the state or federal constitution. It simply held that the legislature had to provide for uniform taxation among all classes of subjects unless a special class was otherwise enumerated in the constitution. *Id.* at 341. That ruling, moreover, rested on provisions of the Oregon Constitution that have since been

## B. *Clarity of State Contracts*

As noted, the first step in an Article I, section 21, Contract Clause analysis is to determine whether a contract exists to which the person asserting an impairment is a party. Also as noted, in determining whether a contract exists, because this case involves state legislation alleged to be a contract, a contract will not be inferred from that legislation unless it unambiguously expresses an intention to create a contract. *Eckles v. State of Oregon, supra,* 306 Or at 390-91; *Campbell v. Aldrich, supra,* 159 Or at 213-14.[21]

An analysis of the issue of legislative contractual intention in this case is unique. That uniqueness flows from

---

amended to require uniform taxation only within like classes of subjects. For a brief discussion of the constitutional history of those provisions, see *Mathias v. Dept. of Rev.,* 312 Or 50, 68-69, 817 P2d 272 (1991) (Van Hoomissen, J., dissenting).

[21] Justice Peterson's dissent argues that there is a more particularized and stricter rule for ascertaining legislative contractual intent if the alleged contract concerns the subject of taxation. The cases cited for that proposition are *Providence Bank v. Billings,* 29 US (4 Pet) 514, 560, 7 L Ed 939 (1830); *Ladd v. City of Portland,* 32 Or 271, 275, 51 P 654 (1898) (quoting *Philadelphia, Wilmington and Baltimore Railroad Co. v. Maryland,* 51 US (10 How) 376, 393, 13 L Ed 461 (1850)); and *Covington v. Kentucky,* 173 US 231, 239, 19 S Ct 383, 43 L Ed 679 (1899).

Those cases do not stand for the proposition asserted. *Providence Bank* and *Philadelphia, Wilmington and Baltimore Co.* (the latter case being the support for the *Ladd* case) do state that a contract to provide a tax exemption will never be assumed unless an intention to contract on that subject is expressed. The point being made in those cases, however, was not that some particular verbal formula was required for a state to create a contract relating to taxation; rather, the Court required that the legislation at issue deal with the subject of taxation on its face. In both of those cases, the legislation at issue *had no tax exemption* at all. The parties who asserted the contract for the exemption argued that an exemption could be *inferred* from various provisions of the legislation; the legislation, however, *did not* refer to taxation. *See Providence Bank, supra,* 29 US at 560; *Philadelphia, Wilmington and Baltimore Railroad Co., supra,* 51 US at 393. In such circumstances, the Court was unwilling to assume that the relevant legislature had contracted to provide a tax exemption. 29 US at 560; 51 US at 393.

Like our own cases, *Covington* requires that legislation be clear and unambiguous before a contract will be inferred from legislation. 173 US at 239. The rule of construction stated in *Covington* is, by its own terms, expressly applicable to *all* statutes alleged to be contracts. *Id.* Although that case may imply that the rule of construction should be applied differently in statutes relating to taxation, the rule itself is not limited to statutes that deal with the subject of taxation.

Taxation is no more a matter of sovereignty than is the legislature's power to legislate at all. If the legislature creates a statutory contract, regardless of subject matter, it limits its sovereign power in some respect. That limit — for good or ill — is part of the substance of the guarantee embodied in the Contract Clause. We require only that there be clarity of contractual intention before finding such a contract. That rule is the same for all statutes, regardless of subject matter.

the fact that in determining whether *former* ORS 237.201 (1989) states a valid contractual obligation, which may not constitutionally be impaired, we do not begin writing on a blank slate. We begin from the premise that PERS is a contract between the state and its employees. The contractual nature of such pension schemes was settled in *Taylor v. Mult. Dep. Sher. Ret. Bd.*, 265 Or 445, 450, 510 P2d 339 (1973).

The state concedes this premise to the extent that it concedes that, as interpreted by this court, PERS is a contract. Notwithstanding its agreement that PERS is *at present* a contract between the state and its employees, however, the state argues that PERS was not intended to be a contract when the legislature first enacted that scheme in 1945.

We decline the state's invitation, implicit in that argument, to revisit the issue of the contractual nature of PERS and similar pension plans, an issue that was first decided against the state nearly two decades ago in *Taylor v. Mult. Dep. Sher. Ret. Bd., supra*. Moreover, because the PERS scheme under consideration in this case is the Public Employes' Retirement Act of 1953, *see supra* note 7, we find it more appropriate to look to the legislature's intent on the enactment of that scheme in 1953, as opposed to its intent on the enactment of the 1945 Act. Our analysis of the history surrounding the enactment of the 1953 Act reveals an underlying legislative intent to create contract rights in PERS employees.

Although little legislative history exists regarding the 1953 Act, the 1953 legislature took certain actions in repealing the 1945 Act and in enacting the 1953 Act that demonstrate a legislative belief that the enactment of the PERS scheme in 1953 created constitutionally protected contract rights. Specifically, in repealing the 1945 Act, the 1953 legislature made careful provision to account for and guarantee payment of all rights accrued under the pre-1953 retirement system. *See* ORS 237.950 to 237.980 (Or Laws 1953, ch 180) (providing for liquidation of pre-1953 Public Employes' Retirement System and protection of rights under that system). One of those protected rights was the tax exemption previously provided for in OCLA 90-723. *See* ORS 237.980 (protecting pre-1953 tax exemption). Although the

legislature's protection of those pre-1953 PERS rights, in and of itself, may not reveal an underlying legislative intent to enact and protect *contract* rights, the careful continuation of benefits accrued under the pre-1953 system gains a different character when cast on the background of the advice given to Governor Patterson by the Attorney General before the pre-1953 system was liquidated.[22] In an opinion, the Attorney General stated:

"In response to your request for our opinion as to the constitutionality of modification of the present retirement annuity and pension plan of the State of Oregon applicable to employees of the state and its political subdivisions, we advise you that the existing plan may validly be changed by legislative action, *if vested rights are preserved by such legislation.*

"The vested rights to which we refer are of two kinds: (1) Rights of retired members of the public employes retirement system to specific amounts of pensions and annuities, provided by chapter 401, Oregon Laws 1945, [the 1945 Act] as amended; and (2) rights of all present members of the public employes retirement system to a substantial equivalent of the benefits which, upon retirement, they would be entitled to receive as members of that system. Either class of rights includes the saving of pending litigation and any cause of action based on a right, and *the contemplated legislation should include such [a] saving provision.*

"It is not unusual to designate rights of contributing members of a system as 'vested' prior to the occurrence of the event upon which payment of benefits is authorized. However, as shown in Kern v. City of Long Beach, (Cal.) 179 P. (2d) 799, 802, 803, *a pension right 'is an integral part of contemplated compensation'*, and, '[a]lthough there may be no right to tenure, *public employment gives rise to certain obligations which are protected by the contract clause of the Constitution, including the right to payment of salary which has been earned.'* Therefore, in making any change in retirement benefits, it is essential to adhere to the principle that an employe's right to retirement benefits can not be destroyed

---

[22] Where a legislative enactment follows the legal advice given, before the enactment, in an opinion of the Attorney General, we have relied on such an opinion as providing an indication of the legislature's purpose in enacting the measure. *See Ragsdale v. Dept. of Rev.*, 312 Or 529, 536, 823 P2d 971 (1992) (particular legislative "enactments apparently were an attempt to respond to the concerns raised by two opinions of the Attorney General").

'by a repeal of a statute without the enactment of a substitute'." 26 Op Att'y Gen 81, 81 (1953) (emphasis added).

We conclude that the actions of the 1953 legislature, in enacting ORS 237.950 to 237.980, reflect a recognition of the concerns posited by the Attorney General. We hold that the legislature intended and understood that PERS constituted an offer, by the state to its employees, for a unilateral contract. We now turn to an examination of the essentials of that PERS contract.

Accrued and accruing pension benefits are protected under Oregon Law. Oregon is in line with the theory of pensions which holds that pensions are a form of compensation and that employees acquire vested contractual rights in pension benefits. *Taylor v. Mult. Dep. Sher. Ret. Bd., supra,* 265 Or at 450. An employee's contract right to pension benefits becomes vested at the time of his or her acceptance of employment.[23] *Id.* at 451; *accord Gantenbein v. PERB*, 33 Or App 309, 315, 576 P2d 1257, *rev den* 282 Or 537 (1978).[24] On vesting, an employee's contractual interest in a pension plan may not be substantially impaired by subsequent legislation. *Taylor v. Mult. Dep. Sher. Ret. Bd., supra,* 265 Or at 450 (*citing Crawford v. Teachers' Ret. Fund Ass'n*, 164 Or 77, 87-88, 99 P2d 729 (1940)); *Adams v. Schrunk*, 6 Or App 580, 586-87, 488 P2d 831, *rev den* (1971).[25] Oregon's Attorney General articulated this contractual nature of pension benefits as follows:

"Employe pension plans, whether established by law or contract, create a contractually based vested property interest which may not be terminated by the employer, *except prospectively*. The employer offers payment of future pension benefits as part of compensation for work currently performed. Employes accept and earn such future benefits by

[23] Although a new employee accepts a PERS employer's offer on the acceptance of employment, one of the terms of that offer is that PERS membership does not actually begin until after a six-month period of employment with the PERS employer. ORS 237.011.

[24] Contractual rights arising before the completion of the service necessary to receive a pension are subject to completion of that service. *Taylor v. Mult. Dep. Sher. Ret. Bd.*, 265 Or 445, 451, 510 P2d 339 (1973).

[25] In *Taylor v. Mult. Dep. Sher. Ret. Bd., supra,* 265 Or at 450-51, this court expressly approved of the holding in *Adams v. Schrunk*, 6 Or App 580, 488 P2d 831, *rev den* (1971).

performing current labor." 38 Op Att'y Gen 1356, 1365 (1977) (emphasis added).

The fundamental logic behind the conclusion that the PERS statutes create a contract between the state and its employees is that:

> "the adoption of the pension plan was an offer for a unilateral contract. Such an offer can be accepted by the tender of part performance." *Taylor v. Mult. Dep. Sher. Ret. Bd., supra*, 265 Or at 452.

Accord Rose City Transit v. City of Portland, 271 Or 588, 593, 533 P2d 339 (1975).[26]

Thus, by virtue of the terms of the statutes, the legislative history, and our holdings that PERS is a contract, the contractual intent of the legislature in this case has been decided. The only remaining question, therefore, is whether and to what extent *former* ORS 237.201 (1989) was intended to be a term of the PERS contract.[27]

---

[26] In *Rose City Transit v. City of Portland*, 271 Or 588, 533 P2d 339 (1975), this court explained:

> "[A]n employee pension or disability plan may be viewed as 'an offer to the employee which may be accepted by the employee's continued employment, and such employment constitutes the underlying consideration for the promise.' " (Quoting *McHorse v. Portland General Electric*, 268 Or 323, 331, 521 P2d 315 (1974).)

[27] Justice Peterson's dissent ignores the existence of the PERS contract, which the state concedes, and explores only whether there is contractual intent for the tax exemption statute. That view errs in failing to consider the significance of context. When faced with a series of statutes that have been held to constitute a contract and a tax exemption term contained within one of those statutes, courts have been far more ready to hold that the tax exemption constitutes part of that contract than in cases where it is alleged that a contract arises from a tax exemption statute standing alone or in relation to other statutes which are not contractual. *Compare* the following cases which hold a tax exemption to be a term of a larger contract: *Northwestern University v. People*, 99 US (9 Otto) 309, 25 L Ed 387 (1879); *Farrington v. Tennessee*, 95 US (5 Otto) 679, 24 L Ed 558 (1878); *New Jersey v. Yard*, 95 US (5 Otto) 104, 24 L Ed 352 (1877); *The Pacific R. R. Co. v. Maguire*, 87 US (20 Wall) 36, 22 L Ed 282 (1874); *Wilmington & Raleigh R. R. Co. v. Reid*, 80 US (13 Wall) 264, 20 L Ed 568 (1872); *Home of the Friendless v. Rouse*, 75 US (8 Wall) 430, 19 L Ed 485 (1869); *McGehee v. Mathis*, 71 US (4 Wall) 143, 18 L Ed 314 (1866); *The Piqua Branch of the State Bank of Ohio v. Knoop, supra*; *Gordon v. The Appeal Tax Court*, 44 US (3 How) 133, 11 L Ed 529 (1845); *with* the following cases finding no contract: *Wisconsin & M. R. Co. v. Powers*, 191 US 379, 24 S Ct 107, 48 L Ed 229 (1903); *Covington v. Kentucky, supra*; *East Saginaw Salt Manufacturing Co. v. City of East Saginaw*, 80 US (13 Wall) 373, 20 L Ed 611 (1872). Most of the cases holding a tax exemption statute to be a contract are instances involving legislative corporate charters and rest on the proposition settled in the famous case of *Trustees of Dartmouth College v. Woodward*, 17 US (4 Wheat) 518, 4 L Ed 629 (1819), that such charters are contracts. The nature of the underlying contract, however, is not controlling. The significant fact is that an underlying contract was present. This case

## C. *Terms of the PERS Contract*

■ The accepted proposition of the contractual nature of PERS is an essential background to the more precise issues presented in this case: whether *former* ORS 237.201 (1989), the PERS tax exemption, is a term of petitioners' PERS contract and, if so, to what extent the benefits due under that contract are tax exempt under that term. As noted, the state does not dispute that petitioners have a contract with the state under PERS. Its argument is simply that the tax exemption provided for in *former* ORS 237.201 (1989), which is altered by section 1 of the law at issue here, is not a term of that contract. The state asserts:

> "Quite clearly, the legislature has established an elaborate pension scheme for public employees. Equally clearly, Oregon judicial decisions deem the statute to contain a unilateral contract offer for a pension benefit, the essential terms of which cannot be changed to the employee's detriment once he or she has undertaken work for the public employer. But it is too much to conclude, as petitioners' arguments readily do, that every statute relating to pension benefits is a term of the contract which the legislature cannot alter without impairing, breaching or taking contractual rights away from public employees."

The state makes several arguments as to why *former* ORS 237.201 (1989) is not a promissory or contractual statute. After considering those arguments, however, we are not persuaded.

Contrary to the state's arguments, the fact that *former* ORS 237.201 was enacted as part of the Public Employes' Retirement Acts of 1945 and 1953 is material in determining the contractual nature of that statute. This case does not involve an isolated tax exemption enacted as a general statute on taxation. Rather, *former* ORS 237.201 (1989) is an integral part of the PERS statutes which this court previously has held to be of a contractual nature. *See*

---

presents an analogous situation where we are faced with an underlying contract — the PERS contract — and the question is whether the tax exemption statute is a term of that contract. Also significant is that in those cases the tax exemption terms are not, on their face, indicative of an intention not to repeal those exemptions. The constitutional protection that was afforded to those provisions' obligations followed from the fact that they were part of a larger contract, not that they were promissory in and of themselves.

*Taylor v. Mult. Dep. Sher. Ret. Bd., supra*, 265 Or at 450 (discussing contractual nature of public pension scheme). That statute was enacted as part and parcel of the acts that became those statutes, the Public Employes' Retirement Acts of 1945 and 1953.[28] The state's arguments view *former* ORS 237.201 (1989) in isolation and evaluate whether it, standing alone, demonstrates the requisite unambiguous legislative intent to create a contractual obligation. That analysis steps back from the proper question, which is whether *former* ORS 237.201 (1989) is a term of a contract that the state concedes exists.

In *The Piqua Branch of the State Bank of Ohio v. Knoop, supra*, the Supreme Court of the United States evaluated the contractual nature of a tax limitation found in an 1845 Ohio statute that authorized the incorporation of banks. In its 60th section, the statute provided that a bank organized under it would pay the state six-percent of its profits, which sum "shall be in lieu of all taxes to which the company or the stock holders therein, would otherwise be subject." 57 US at 377. Thereafter, the Ohio legislature attempted to tax the banks at a higher rate under a law entitled: "An act to tax banks and bank and other stocks, the same as property is now taxable by the laws of the State." *Id.*

A bank challenged the act imposing the higher tax rate, alleging that the new law impaired the obligations of its contract with the state which it had gained through its charter issued under Ohio's general laws regarding the incorporation of banks. The Ohio Supreme Court had sustained the validity of the new law, stating:

"'It must be admitted the [60th] section contains no language importing a surrender of the right to alter the taxation prescribed, unless it is to be inferred from the words, "shall be in lieu of all taxes to which such company, or the stockholders thereof, on account of stock owned therein,

---

[28] ORS 237.001, part of the 1953 Act, provides: "*ORS 237.001 to 237.315* shall be known as the Public Employes' Retirement Act of 1953." (Emphasis added.) *Former* ORS 237.201 was enacted as *part of*, not merely incident to, that Act. Our emphasis here is placed on the fact that *former* ORS 237.201 was *enacted* as part of the 1953 PERS Act, Or Laws 1953, ch 200, § 22, not merely placed among the PERS statutes, as is intimated by Justice Peterson's dissent. Mere placement of a particular statute in any part of the Oregon Revised Statutes is not significant. ORS 174.540.

would otherwise be subject"; and it is frankly conceded that if these words had occurred in a general law, they would not be open to such a construction. If the place where they are found is important, we have already seen this law is general in many of its provisions, and upon a general subject. Why may not this be classed with these provisions, especially in view of the fact, that in its nature it properly belongs there? We think it should be regarded as a law prescribing a rule of taxation, until changed, and not a contract stipulating against any change: a legislative command and not a legislative compact with these institutions.' " 57 US at 378 (quoting *Debolt v. The Ohio Life Insurance and Trust Company*, 1 Ohio St 563, 575 (1853)).

In reversing the decision of the Ohio Supreme Court, the Supreme Court of the United States responded:

"The 60th section is not found in a general law, as intimated by the Supreme Court of the State. The act of 1845 is general only in the sense, that all banking associations were permitted to organize under it; but the Act is as special to each bank as if no other institution were incorporated by it. We suppose this cannot be controverted by any one. This view is so clear in itself that no illustration can make it clearer.

"Every valuable privilege given by the charter, and which conduced to an acceptance of it and an organization under it, is a contract which cannot be changed by the Legislature, where the power to do so is not reserved in the charter. The rate of discount, the duration of the charter, *the specific tax agreed to be paid*, and other provisions essentially connected with the franchise, and necessary to the business of the Bank, cannot, without its consent, become a subject for legislative action." 57 US at 379-80 (emphasis added).

The Court placed special emphasis on the fact that, generally, charters of private corporations had previously been held to be "in the nature of a contract between the State and the corporation." *Id.* at 381. That fact, combined with the relationship of the tax limitation to those surrounding contractual statutes, led the Court to conclude that the Ohio tax statute was within the purview of protection provided by the federal Contract Clause. The Court concluded that the tax limitation statute "does not import to be a legislative command nor a rule of taxation until changed, *but a contract*

*stipulating against any change*, from the nature of the language used and the circumstances under which it was adopted." *Id.* at 382 (emphasis added).[29]

In determining whether a particular statute is of a contractual nature, we, like the Court in *Piqua*, conclude that the context in which the tax statute is enacted is of primary importance. Specifically, in this case, the context and purpose of the entire PERS contract (discussed above) and the fact that *former* ORS 237.201 was enacted as part and parcel of the Public Employes' Retirement Act of 1953 lead to a conclusion that *former* ORS 237.201 is a term of the larger PERS contract. Only by looking at the statute in isolation, as the state asks us to do, could one escape this conclusion. Such an exercise, however, is not analytically proper or helpful. Consequently, we hold that PERS was intended to be and is a contract between the state and its employees, and that *former* ORS 237.201, enacted as an essential part of and within the context of that contract, is a term of that contract.[30]

Our holding that *former* ORS 237.201 is a term of the PERS contract, moreover, is supported by more than just the

---

[29] As one judge has stated:

"The Supreme Court in *Piqua* * * * looked not to the absence of language restricting subsequent legislative modification of the method of taxation, *but to the context and purpose of the entire act*, and arrived at a conclusion contrary to that of the Ohio court." *Application of Skidmore*, 75 Ill 2d 33, 387 NE2d 290, 297 (1979) (Ryan, J., dissenting) (emphasis added).

[30] As noted, *supra* note 10, the 1989 legislature passed HB 3508 (Oregon Laws 1989, chapter 906), a bill identical to Oregon Laws 1991, chapter 823, in the respects under consideration. Although the voters rejected HB 3508, the similarity of purpose between that bill and Oregon Laws 1991, chapter 823, makes the legislative history of the unenacted bill worthy of note.

A Research Report, prepared by the Legislative Revenue Office for the Joint Committee on Retirement Tax Equity regarding HB 3508, entitled "Taxation of Retirement Income," in a section on "A History of Retirement Exclusions in Oregon," states:

"Public Employes' Retirement System (PERS) pensions have been exempt since the system was created in 1953. Before that, state pensions were exempt since they began in 1946. *At that time, the exemptions were considered to be a method to increase benefits to state employees without directly appropriating money.*" Exhibit 29, Joint Committee on Retirement Equity, HB 3508 (May 18, 1989) (emphasis added).

This rather unsurprising conclusion is additional evidence that the tax exemption was considered by all concerned to be part and parcel of the PERS retirement package and was, at its core, a form of deferred compensation. That compensation is, expressly, the subject of the PERS contract. *Taylor v. Mult. Dep. Sher. Ret. Bd., supra*, 265 Or at 452.

context and purpose of the PERS contract and *former* ORS 237.201. To be more precise, the language of the tax exemption in *former* ORS 237.201 (1989), on its face, unambiguously evinces an underlying promissory, contractual legislative intent. *See Whipple v. Howser*, 291 Or 475, 480, 632 P2d 782 (1981) (the best evidence of the legislature's intent behind a particular statute is the language of the statute itself); *State ex rel Cox v. Wilson*, 277 Or 747, 750, 562 P2d 172 (1977) (same). In *Eckles v. State of Oregon, supra,* 306 Or at 391, this court noted that when a statute contains language which is "indicative of a legislative commitment not to repeal or amend the statute in the future," such language confirms a conclusion that the statute is a statutory contract.

As enacted in 1945 and 1953, *former* ORS 237.201 is, if anything, more promissory in its language than the rest of the PERS scheme that, independently, this court has held to be a contract. *See Taylor v. Mult. Dep. Sher. Ret. Bd., supra,* (discussing contractual nature of public pension scheme). As enacted, the exemption provided that the PERS retirement benefits "shall be" exempt from all state and local taxes. The language of the statute in *Piqua* — which was held to be contractual — simply stated that the specified tax "*shall be* in lieu of all taxes to which the company or the stock holders therein, would otherwise be subject." 57 US at 377 (emphasis added). In its promissory aspect, that the specified tax "shall be" in lieu of other taxes, the statute in *Piqua* is identical to *former* ORS 237.201, as the latter statute existed from 1945 to 1969.

In 1969 the legislature amended the statute to provide that benefits paid under PERS "shall be exempt from all state, county and municipal taxes *heretofore or hereafter imposed.*" Or Laws 1969, ch 640, § 13 (emphasis added). Petitioners argue that, by virtue of that amendment, the promissory character of the statute became unmistakable. The state counters that the amendment was intended only to prevent repeal of the tax exemption by *implication* rather than to prevent the legislature from *expressly* repealing the provision. We need not choose between those competing arguments about the intent of the 1969 amendment; we previously have concluded that the 1945 and 1953 legislation

was promissory and the legislature intended it to be a contract on its enactment. At minimum, nothing in the 1969 amendment detracts from that conclusion.[31]

In sum, we hold that the tax exemption in *former* ORS 237.201 (1989) is a term of the PERS contract and an obligation of the state under that contract. Therefore, by virtue of Article I, section 21, of the Oregon Constitution, the obligations of that contract, including the exemption from taxation, are not subject to legislative impairment without the consent of the PERS beneficiaries.

D. *Nature of the Obligation of Former ORS 237.201*

■ Although we have determined that *former* ORS 237.201 (1989) states an obligation of the PERS contract, before we can determine whether Oregon Laws 1991, chapter 823, sections 1 and 3, impair or breach that obligation, we must define that obligation. Put more plainly, we must construe the statute to determine what PERS benefits are exempt from taxation under *former* ORS 237.201 (1989).

In pertinent part, *former* ORS 237.201 (1989) states:

"The right of a person to a pension, an annuity or a retirement allowance, to the return of contribution, the pension, annuity or retirement allowance itself, any optional benefit or death benefit, or any other right *accrued or accruing* to any person under the provisions of ORS 237.001 to 237.315, and the money in the various funds created by ORS

---

[31] Justice Peterson's dissent relies on *Covington v. Kentucky, supra,* to support its view that tax exemption statutes with language arguably even more promissory than the statute at issue here do not constitute contracts. *Covington* is distinguishable. The result in that case turned on the fact that Kentucky, the state which passed the tax exemption, had passed a general statute which reserved the power to the legislature to repeal or amend *all* statutes at will (which necessarily included the statute at issue there). 173 US at 238. Although the reservation statute did contain an exception that repeal or amendment would not be allowed if such an intent was "plainly expressed" in a given statute, *id.,* the Court considered it more significant that the very purpose of the reservation statute was to permit the state to maintain control over the type of statute at issue in that case and that the Kentucky legislature did not, in the tax exemption, relinquish that expressly reserved power. *Id.* at 238-39, 239-40. Moreover, and most importantly, the tax exemption at issue there was an isolated exemption statute outside the confines of a larger contract. In distinction to other cases where the court noted the contractual nature of corporate charters, *see supra* note 27, the Court emphasized that the charter of the municipal corporation — the party seeking to enforce the tax exemption — had long been held to be non-contractual. *Id.* at 241-42.

237.271 and 237.281, shall be exempt from garnishment and all state, county and municipal taxes heretofore or hereafter imposed[.]" (Emphasis added.)

In construing that provision, we are aided by very little legislative history as to its meaning. In any event, to discern the legislature's intent behind the statute we need turn only to the primary indicator of that intent, the language of the statute itself. *Whipple v. Howser, supra*, 291 Or at 480.

Under the language of the statute, the permanence of the tax exemption may not be questioned; the statute is unambiguous on that point. Thus, whatever PERS retirement benefits are protected by the tax exemption, the state is contractually bound to maintain that exempt status as required by *former* ORS 237.201 (1989).

The language of the statute also reveals what particular PERS retirement benefits are contractually protected from taxation. In legal and logical contemplation, three categories of PERS rights potentially exist: (1) rights that have accrued; (2) rights that are accruing; and (3) rights that may accrue in the future. *Former* ORS 237.201 (1989) unambiguously addresses itself to two of those categories, namely, the variously identified benefits that have "accrued" or are "accruing" under PERS. The statute does not, however, refer to PERS retirement benefits that may accrue in the future. Had it chosen to do so, the legislature could have dealt with future benefits, but it did not.

For example, within *former* ORS 237.201 (1989) itself, the legislature evidenced the fact that it knew how to refer to the future. It provided that the stated rights are exempt from all state and local taxes "heretofore or *hereafter* imposed." (Emphasis added.) That language is in sharp contrast to the language of the statute referring to what rights are protected, *i.e.*, those rights "accrued or accruing." That distinction is significant. Because the legislature did not include benefits that may accrue in the future as compensation for work not yet performed within the scope of the tax exemption, we may not include them. ORS 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, *not to insert what has been omitted*, or to omit what has been inserted.") (emphasis added).

We conclude that *former* ORS 237.201 (1989), as a term of the PERS contract, means that the state promised that all PERS retirement benefits that have accrued or are accruing for work performed so long as *former* ORS 237.201 remained in effect (*e.g.*, before the enactment of Oregon Laws 1991, chapter 823) are exempt from state and local taxation forever. But the promise — the state's obligation — is no greater than that.

In practical terms, what this means is that the legislature did not contract away its ability to tax PERS retirement benefits that may accrue in the future based on work not yet performed. All PERS retirement benefits accrued or accruing after September 28, 1991,[32] as compensation for work performed after that date, are not contractually exempt from state income taxation. Thus, because the state has no contractual obligation not to tax unaccrued PERS retirement benefits for work performed after the effective date of the Act, any action by the legislature in relation to the taxation of those unaccrued benefits could not constitute an impairment or breach of a contractual obligation.[33]

Having defined the relevant obligation of the PERS contract, we turn next to the question of impairment, *i.e.*, whether either section 1 or 3 of Oregon Laws 1991, chapter 823, impairs that obligation of the PERS contract.

E.  *Impairment of the Contract Obligation*

As noted, for purposes of this case, sections 1 and 3 are the primary sections of Oregon Laws 1991, chapter 823. Section 1 expressly narrows the scope of the contractual tax exemption provided for in *former* ORS 237.201 (1989), as we have now defined that exemption. Section 3, by repealing the tax exemption previously provided for in *former* ORS 316.680(1)(d) (1989), results in the taxation of PERS retirement benefits.

---

[32] September 28, 1991, was the last day before the effective date of Oregon Laws 1991, chapter 823.

[33] *State ex rel Thomas v. Hoss,* 143 Or 41, 21 P2d 234 (1933), had a similar holding. In that case, this court held that the plaintiff's salary earned before the effective date of a 1933 law, which reduced employees' salaries, could not be affected by the law because of the Contract Clause of Article I, section 21, of the Oregon Constitution. The court held, however, that the then-new law could reduce plaintiff's salary prospectively. 143 Or at 47.

From a constitutional standpoint, Oregon Laws 1989, chapter 823, resembles in many respects the "Transfer Act," Or Laws 1982 (Special Session 3), ch 2, § 1(3), the constitutionality of which this court scrutinized in *Eckles v. State of Oregon, supra.* In that case, this court determined that the plaintiff had established that ORS 656.634 created a contract between the plaintiff and the state. Among other things, that statute provided that monies in the state Industrial Accident Fund (IAF) would be used exclusively for purposes declared by the workers' compensation statutes and that the state had no proprietary interest in them.

In spite of ORS 656.634, however, the 1982 legislature enacted the Transfer Act. Section 4 of the Transfer Act modified ORS 656.634 to permit the state to "direct legislatively the disposition of any surplus [funds] in excess of reserves" contained in the IAF. Section 2 of the Transfer Act directed the State Treasurer to transfer $81 million in surplus funds from the IAF to the state General Fund.

This court sought to determine whether sections 2 and 4 of the Transfer Act unconstitutionally impaired the obligations of the ORS 656.634 contract. After emphasizing that ORS 656.634 imposed a valid contractual obligation, the court held that section 4 of the Transfer Act was unconstitutional:[34]

> "Section four of the Transfer Act impairs the obligation of the contract formerly stated in ORS 656.634 because section four would eliminate that obligation with respect to IAF surplus funds. The state could use IAF surplus funds for any purpose that it chose, without contractual liability to [plaintiff]. Section four, then, violates Article I, section 21, of the Oregon Constitution * * *." *Eckles, supra,* 306 Or at 399.

With regard to section 2, the court stated that the invalidity of that section did not necessarily follow from the invalidity of section 4. *Id.* at 399-400. First, the court held

---

[34] The court analyzed section 4 first because:

"If section four of the Transfer Act is a constitutionally valid modification of the state's contract with [plaintiff], then section two is valid as well because the transfer made by section two is consistent with the modified contract." *Eckles v. State of Oregon, supra,* 306 Or at 395.

that the invalid section 4 should be severed from the remainder of the Transfer Act. *Id.* at 400 n 19. Next, the court discussed the long-held distinction between an impairment of an obligation of a contract and a breach of contract. *Id.* at 400-01. Finally, the court discussed the fact that, although section 2 of the Act violated the contract, it did not, as did section 4, alter or impair the obligations of the contract. Rather, the court held that, although section 2 "breached the state's contract, the obligation of that contract remains. That obligation is to compensate [plaintiff] for the breach." *Id.* at 402. Consequently, section 2 of the Transfer Act did not violate Article I, section 21, of the Oregon Constitution.

Like section 4 of the Transfer Act that impaired an obligation of the state's contract with the plaintiff in *Eckles* as to surplus funds in the IAF, section 1 of the 1991 law impairs an obligation of the PERS contract under which the state has contracted not to subject PERS retirement benefits, accrued or accruing before the effective date of the 1991 Act, to any state or local taxes. Section 1, quite simply, eliminates the state's contractual obligation as to income taxes. The unilateral change worked by section 1, if permitted, would allow the state to subject formerly exempt PERS retirement benefits to state income taxes *without contractual liability to petitioners* — a result directly within the prohibition of Article I, section 21.

We conclude, therefore, that section 1 of Oregon Laws 1991, chapter 823, violates Article I, section 21. As a law impairing an obligation of a contract, section 1 is a nullity as it relates to PERS retirement benefits accrued or accruing for work performed before the effective date of that section. Those benefits may not be taxed. *Former* ORS 237.201 (1989). Because it is unconstitutional, section 1, not being necessary to the remainder of the Act, is severed. *See* Or Laws 1991, ch 823, § 9(2) (providing for severability).

For the reasons that follow, however, we hold that section 3 of Oregon Laws 1991, chapter 823, does not violate the Contract Clause of Article I, section 21.[35]

---

[35] Because we have held that Oregon Laws 1991, chapter 823, section 1, is void as to PERS retirement benefits accrued or accruing before the effective date of the 1991 Act, further discussion of section 1, in relation to petitioners' remaining

As we have explained, section 1 changes a part of the state's contractual obligation. Section 3, on the other hand, deals with the tax exemption that arises out of the contractual obligation. The exemption in the tax laws is only a mirror of the obligation; it is not the obligation itself. The distinction is important.

In *Eckles*, this court explained that Article I, section 21, does not prevent a state from breaching its contracts:

"*Ogden v. Saunders*, [25 US (12 Wheat) 213, 6 L Ed 606 (1827)], established that the obligation of a contract was to be understood as the legal duties imposed upon the contracting parties by the operation of law upon the contract. Ordinarily, parties to a contract are not obligated to perform the contract according to its terms; in lieu of performance, the breaching party may compensate the nonbreaching party for the failure to perform as directed by the contract. * * * Specific performance is available only if other remedies are deemed to be inadequate to protect the nonbreaching party's contractual interests. *Cf.* Restatement (Second) Contracts §§ 359-60 (1979).

"Moreover, it has long been established that a state may, through eminent domain proceedings, violate or abrogate its contracts without impairing its contractual obligations. *See West River Bridge Co. v. Dix*, [47 US (6 How) 507, 12 L Ed 535 (1848)]. In *West River Bridge Co.*, Vermont's condemnation of the plaintiffs' toll-bridge franchise was, in effect, a breach of the franchise contract together with a payment of damages for the breach. Although the franchise contract created a contractual obligation, which Vermont could not contractually impair, that obligation was not an obligation of specific performance but of compensation. This eminent domain rule is somewhat akin to the rule of the general law of contracts that there is ordinarily no contractual obligation of specific performance. * * *

"Given the general law of contractual obligations and the state's undoubted ability to breach its contracts through the use of its power of eminent domain, we conclude that the state is not obliged by Article I, section 21, to perform its contracts according to the terms of those contracts, at least where, as in this case, the contractual interests of the parties with whom the state has contracted are financial or property

constitutional challenges, is not necessary. The remainder of this opinion, therefore, pertains only to section 3 of that Act.

interests. In such cases, Article I, section 21, protects contractual interests by obliging the state to compensate for its breach of those contracts." 306 Or at 400-01 (footnotes and some citations omitted).

Like section 2 of the Transfer Act in *Eckles*, which breached the state's contract with the plaintiff by mandating an action by the State Treasurer contrary to that contract, by repealing the tax exemption previously afforded by *former* ORS 316.680(1)(d) (1989), section 3 of the 1991 law results in the taxation of PERS retirement benefits, an action in breach of the tax exemption term of the PERS contract. In other words, the state has chosen, pursuant to section 3 of the 1991 law, to breach the tax exemption term of the PERS contract that the state has with its employees. This the state may not do with impunity. Anyone whose PERS benefits are contractually exempt from taxation, in whole or in part, is entitled to a remedy for the state's breach.[36] Notwithstanding the breach of petitioners' contract caused by section 3, however, that section does not in any way impair the state's obligations to petitioners under the PERS contract. Oregon Laws 1991, chapter 823, section 3, therefore, does not violate Article I, section 21, of the Oregon Constitution.[37]

## STATE JUST COMPENSATION CLAUSE

Petitioners next argue that the tax imposed on their retirement benefits under section 3 of Oregon Laws 1991, chapter 823, constitutes a governmental taking of their property without just compensation, in violation of Article I,

---

[36] In granting this court jurisdiction to determine whether the state's taxation of PERS retirement benefits is unconstitutional, the legislature also provided: "If the Supreme Court determines that such taxation violates constitutional provisions, the Supreme Court may, in its discretion, fashion an appropriate remedy." Or Laws 1991, ch 796, § 15(1). The legislative authorization did *not* extend to fashioning a remedy for sub-constitutional wrongs, such as a breach of contract. Even if our inherent authority would permit us, as a matter of discretion, to fashion a remedy, we decline to do so here. The legislature is the most appropriate branch of government in the first instance to choose among the available remedies. We express no opinion as to the appropriate remedy for the breach of contract caused by section 3.

[37] Notwithstanding our citation of several opinions of the Supreme Court of the United States in our analysis of the state Contract Clause, our holdings that Oregon Laws 1991, chapter 823, section 1, is unconstitutional and that section 3 of that same law is a breach rather than an impairment of the PERS contract are based independently on state, rather than federal, law. *See Michigan v. Long*, 463 US 1032, 1041, 103 S Ct 3469, 77 L Ed 2d 1201 (1983) (state court should identify independent state ground for its decision).

section 18, of the Oregon Constitution.[38] Article I, section 18, provides in part:

> "Private property shall not be taken for public use * * * without just compensation; nor except in the case of the state, without such compensation first assessed and tendered[.]"

Petitioners argue that Oregon Laws 1991, chapter 823, should be held void or, alternatively, that that statute should be amended so that it will provide just compensation for the alleged taking. After considering petitioners' arguments, we disagree.

In this case, Oregon Laws 1991, chapter 823, section 3, is not an exercise of the state's constitutional taking power for which Article I, section 18, triggers the requirement of just compensation. Rather, that law is an exercise of the state's constitutional taxing power. Not every acquisition of a private property interest by the state constitutes a taking under section 18; through the lawful exercise of other powers available to it, *e.g.*, the taxing power, the "police power," or the power to purchase property, the state may, consistently with constitutional requirements, acquire private property interests in a manner that does not constitute a taking. Ordinarily, when the government acquires such an interest through a power other than its taking power, just compensation is not constitutionally required. *See Eckles v. State of Oregon, supra*, 306 Or at 398 ("Exercise of the 'police power,' unlike exercise of the 'eminent domain power,' does not require compensation."); *Woodard Lbr. Co. v. Un. Comp. Com.*, 173 Or 333, 338, 145 P2d 477 (1944) (government acquired property through purchase, not through exercise of taking power); *but see Enterprise Ir. Dist. v. Enterprise Co.*, 137 Or 468, 479, 300 P 507 (1931) (discussing takings issue in relation to *ad valorem* special assessments). Thus, because the state has not taken petitioners' property, as contemplated by Article I, section 18, of the Oregon Constitution, there is no violation of that constitutional provision.

---

[38] Petitioners also argue that Oregon Laws 1991, chapter 823, section 1, constitutes a taking, without just compensation, of the property interest which they have in the tax exemption term of the PERS contract. Given our disposition of that section above, however, we do not reach that contention.

## FEDERAL CONTRACT CLAUSE

■    Petitioners' claim under the federal Contract Clause, Article I, section 10, clause 1, of the United States Constitution, also is not well taken. Although the analysis under that clause is different than under the Contract Clause of the Oregon Constitution,[39] we conclude that Oregon Laws 1991, chapter 823, section 3, does not violate that provision for the same reason that it does not violate the Oregon Constitution, *i.e.*, the law provides for a breach of the PERS contract, not an impairment of an obligation of the state under that contract. *See Hays v. Port of Seattle*, 251 US 233, 237, 40 S Ct 125, 64 L Ed 243 (1920) (breach of contract differs from impairment of contract obligation); *Brown v. Colorado*, 106 US (16 Otto) 95, 98, 1 S Ct 175, 27 L Ed 132 (1882) (violation of contract differs from impairment of contract obligations);[40] *Ogden v. Saunders, supra*, 25 US (12 Wheat) at 256-57 (describing difference between an "impairment of a contract" and "impairment of an obligation of a contract").

## FEDERAL JUST COMPENSATION CLAUSE

■    With respect to petitioners' claim that Oregon Laws 1991, chapter 823, section 3, worked a taking under the Fifth

[39] *See generally United States Trust Co. v. New Jersey*, 431 US 1, 97 S Ct 1505, 52 L Ed 2d 92, *reh'g den* 431 US 975 (1977) (discussing and applying federal analysis). The appropriate steps to determine whether, in the case of a contract between the government and a private person, a state law violates the federal Contract Clause are: (1) Whether the state law constitutes a substantial impairment of a contractual relationship; (2) whether the state law creating the impairment is justified by a significant, legitimate public purpose; and (3) whether the method used by the state to advance the significant and legitimate public purpose constitutes an unnecessarily broad repudiation of its contract obligations to private persons. *See* R. Rotunda, J. Nowak, & J. N. Young, Constitutional Law § 15.8, at 103-04 (1986 & Supp 1991) (summarizing relevant Supreme Court of the United States cases).

[40] In *Brown v. Colorado*, 106 US (16 Otto) 95, 1 S Ct 175, 27 L Ed 132 (1882), the Supreme Court of the United States held that no federal question existed as to whether the State of Colorado impaired the obligation of a contract made by the Territory of Colorado. The Court stated:

"The decision of this question by the state court is not reviewable here. All the obligations of the contract remain, and the State has not attempted to impair them. If the contract is all that the plaintiff in error claims it to be, and the Constitution and statutes are just what he says they are, the most that can be contended for is that the State has refused to do what the Territory agreed should be done. *This may violate the contract, but it does not in any way impair its obligation.*" 106 US at 98 (emphasis added).

and Fourteenth Amendments to the United States Constitution, those constitutional provisions, like Article I, section 18, of the Oregon Constitution, do not limit a state's otherwise lawful exercise of its power of taxation. *Pittsburgh v. Alco Parking Corp.*, 417 US 369, 373-74, 94 S Ct 2291, 41 L Ed 2d 132 (1974). Thus, section 3 does not violate those constitutional provisions.

## CONCLUSION

In conclusion, in the light of the promissory language of *former* ORS 237.201 (1989) and the context of the enactment of that statute as part of the PERS contract, we hold that petitioners have a contract with the state, *see supra* note 5, to receive their PERS retirement benefits free from state and local taxation as provided by *former* ORS 237.201 (1989); and that Oregon Laws 1991, chapter 823, section 1, impairs an obligation of that contract in violation of Article I, section 21, of the Oregon Constitution and, therefore, is a nullity as it relates to PERS retirement benefits accrued or accruing for work performed before the effective date of that 1991 legislation. We further hold that Oregon Laws 1991, chapter 823, section 3, breaches petitioners' PERS contract insofar as it subjects to state and local taxation PERS retirement benefits accrued or accruing for work performed before the effective date of that 1991 legislation, rather than impairing any of the obligations of that contract, and therefore section 3 does not violate the Contract Clauses of either the Oregon or the United States Constitutions; moreover, section 3 does not violate either the Oregon or United States Constitutions in any of the other respects argued by petitioners.

Oregon Laws 1991, chapter 823, section 1, is declared unconstitutional under Article I, section 21, of the Oregon Constitution insofar as it affects retirement benefits accrued or accruing for work performed on or before September 28, 1991. The constitutional validity of Oregon Laws 1991, chapter 823, section 3, is sustained.

**FADELEY, J.,** concurring in part and dissenting in part.

For decades, state government promised state and local government employees that their Public Employes'

Retirement System (PERS) retirement pensions and annuities would forever be exempt from state income taxes. That tax exemption promise became a term of the employment contract between government and its workers.

The promise was embodied in statute. The statute proclaimed: "The right of a [PERS member] to a pension * * * shall be exempt from * * * all state, county and municipal taxes heretofore or hereafter imposed." ORS 237.201 (1989). The trust funds out of which the pension will be paid amounted to $12.5 billion in mid-1991.[1] These trust funds are also covered by the promise of tax exemption by the language in ORS 237.201 extending the promise to cover "the money in the various funds created by ORS 237.271 and 237.281."

As a term of the employment contract, the promise of tax exemption for PERS retirement benefits carries with it constitutional protections. The Oregon Constitution provides:

"No * * * law impairing the obligation of contracts shall ever be passed * * *." Or Const, Art I, § 21.

The federal constitution commands:

"No State shall * * * pass any * * * Law impairing the Obligation of Contracts * * *." US Const, Art I, § 10.

Notwithstanding the promises, and the constitutional guarantees that no law impairing such promises shall ever be passed, the 1991 legislature chose to attempt to tax PERS retirement benefits by passing new statutes that removed the provisions of statute that reflected the promise of tax exemption. The effect of the 1991 legislation is to repeal the statutory promise, and do so retroactively, in order to exact state income taxes from PERS pension payments. I concur in the holding that the legislation, altering the promise with retroactive effect, violates the state constitution, Article I, section 21, and, as a consequence, that the PERS benefits accrued to retired members and those accruing to other members before the effective date of the 1991 Act "may not be taxed." I concur that, as to those members and such

---

[1] Public Employes' Retirement System Comprehensive Annual Financial Report, June 30, 1991.

accrued and accruing benefits, the 1991 Act is a nullity. I concur both for the reasons set out in the lead opinion as to section 1 of Oregon Laws 1991, chapter 823, and for the reasons set out in this separate opinion.

However, I hold that section 3 of that chapter likewise violates the state contract impairment guarantee, as well as violating its federal counterpart, Article I, section 10, of the Constitution of the United States. I hold it also void, a nullity, and that any action to tax PERS pension benefits under it is impermissible. I cannot join in the majority's failure to do so. The majority agrees that the tax code exemption is "a mirror of the obligation" in the state's contract promise to never tax PERS benefits, but then it permits the legislature to use that mirror-image idea to impair the obligation. 314 Or at 32-33.

I dissent from that holding to the extent that the majority opinion upholds the constitutional validity of section 3. Retroactively repealing the tax exemption does indeed violate both the state and federal constitutions. It is not an action that may be justified or explained away by the use of mirror-based abstract analogies. I do not agree that altering the second exemption section — to accomplish the identical result that is held, as to the first exemption section, to be an unconstitutional result and a "nullity" — is constitutionally permissible. The effect — impairing the same obligation of the same contract — is the same. The state's promise to never tax PERS benefits, accepted and acted on by the public employees, is an obligation of the state's contract that is impaired identically by each section.

This case is a special proceeding created by Oregon Laws 1991, chapter 796, section 15, to test the constitutionality of imposing state taxation on retirement benefits paid to PERS retirees from a PERS trust fund, notwithstanding the state's promise to never tax such pensions.[2] Section 15(1) describes the task as "to determine whether the taxation of retirement benefits received by *retired members* * * * is in violation of *any* constitutional provision." (Emphasis added.) Section 15(2) permits "any person interested in * * *

_____

[2] The exemption for those benefits was removed by Oregon Laws 1991, chapter 823. That change is set out *post* at the relevant point in this opinion, 314 Or at 11-14.

a state income tax imposed upon amounts received from" PERS to petition this court for "review" of the legislative act, but section 15(6) limits requests for review to those filed within 60 days of the new law's effective date. Section 15(3) provides that "a person shall be considered interested * * * if the person is a retired member" of PERS. Retired persons have petitioned asserting that the 1991 legislation removing the tax exemption from their vested PERS pension payments and imposing a nine percent income tax on them is unconstitutional.

The constitutionally correct solution to the problem posed by the legislation retroactively reneging on state government's contracts follows. I begin by establishing the formation and the terms of that contract.

As of June 30, 1991, retired employees of state and local government numbering 56,160[3] had earned retirement benefits by long years of public service, relying on the promise of tax exemption, and they or their survivors were, by that date, receiving pensions in individually varying amounts.

## THE STATE'S CONTRACT

*The Offer.* For 45 years Oregon state government promised its employees and prospective employees a permanent retirement system in which retirement benefits would always be exempt from state and local taxes. That promise was memorialized in state statute for all who chose a career of service with state or local government to see.

During those 45 years, ORS 237.201 or its predecessor statutes provided in part:

> "The right of a person to a pension, an annuity or a retirement allowance, to the return of contribution, [to] the pension, annuity or retirement allowance itself, any optional benefit or death benefit, or any other right accrued or accruing * * * shall be exempt from * * * all state, county and municipal taxes."

---

[3] Oregon Public Employes Retirement System (PERS) Member Handbook 3 (1992-93). Another 133,178 persons were active but not-yet-retired members of PERS who entered and performed public service relying on the promise of tax exempt pensions. *Ibid.* The 1991-92 Oregon Blue Book, p 109, reports that, in calendar year 1989, an additional 20,000 inactive members and 950 different Oregon public employers were utilizing PERS.

For the last 22 of those 45 years, the state's tax exemption promise expressly referred to "all state, county and municipal taxes *heretofore or hereafter imposed.*" ORS 237.201, as written from 1969 to 1991.

State government promised all persons who have given service as city, county, school, special district, and state employees, including police, fire fighters, teachers, and judges that their retirement income from PERS will never be subject to the state income tax.

Initially, the income tax code did not mirror the tax exemption promise. It contained no language designed to implement the promise of permanent tax exemption for PERS retirement payments. However, PERS payments were not taxed. Thereafter, Oregon Laws 1957, chapter 582, section 1, amending a relevant tax law, expressly noted the pre-existing exemption in ORS 237.201 by enacting a statutory cross-reference in the income tax law to honor the exemption.

In 1969, just after Oregon voters agreed to use federal-law definitions of taxable income to establish the dollar amounts subject to state income taxation, a corollary to the promise that PERS retirement payments would always be tax exempt was placed in the Oregon income tax chapter.[4] That 1969 provision required subtraction of PERS benefit payments from the amount of taxable income as defined by

---

[4] Immediately before adoption of that exemption-by-deduction language (as part of the switch-over to use of general federal definitions of taxable income), there was a very similar statutory provision as part of pre-existing taxable income definitions, one that also cross-referenced the absolute exemption of PERS benefits from state taxes stated in ORS 237.201.

ORS 316.110 (1967) provided in part:

" 'Gross income' does not include the following items, *which shall be exempted from taxation* under this chapter:

"* * * * *

"(13) * * * Nothing in this subsection is intended to affect or limit the provisions of ORS 237.201. This subsection is applicable to tax years beginning after December 31, 1956."

At that time, ORS 237.201 provided (as it does, in part, now provide, inasmuch as the section of the 1991 Act attempting to change it is unconstitutional, a "nullity" and, therefore, void) that:

"The right of a person to a pension, an annuity, or a retirement allowance [and] the pension, annuity, or retirement allowance itself * * * or any other right accrued or accruing to any person under [the PERS statutes] * * * shall be exempt from *all* state, county, and municipal taxes * * *." (Emphasis added.)

federal law, thus lowering the amount of income that was taxable under state law by the amount of the PERS payments. Or Laws 1969, ch 493, § 15. That is to say, the 1969 Legislative Assembly enacted both the "heretofore or hereafter imposed" language (Or Laws 1969, ch 640, § 13) and the language mandating subtraction "from federal taxable income" of amounts of "any payments received from [PERS] under ORS 237.001 to 237.315 which are exempt from state taxation under ORS 237.201." *Compare* ORS 237.201 (1969) *with* ORS 316.067(1)(d) (1969). These simultaneously enacted statutes exempting PERS retirement payments from income taxation continued the state's promise of tax exemption. They dovetailed exactly with and confirmed each other in statute, for all to see, as evidence of the government's continuing contractual promises that PERS retirement benefits once earned would always be exempt from state taxation.

Other aspects of the promised retirement system are relevant to deciding the constitutional questions in this case. The amount of monthly benefits that are payable after retirement varies, depending on number of years of service in the employment of state and local government, ORS 237.147(2), and on the final salary level attained, ORS 237.147(1).[5] A specific percentage multiplier for each year of service to state or local government is applied to the contributions deposited in the PERS trust fund.

The pension multiplier for most employees for each year of public service is 1.67 percent. The net effect of the 1991 tax laws is a reduction in PERS pension income after taxes of about 5 percent to 8 percent. Each general service employee is deprived, by taxation of retirement benefits, of at least the equivalent of benefits earned during three years of that person's public service. A deprivation of that magnitude is substantial and, because it results from a law passed to retroactively change a term of the state's contract with public employees, violates the obligation of the state's contract.

In light of the cases construing the protection against impairment of obligation, which will be reviewed

---

[5] The same two factors of length of service and highest final salary level control separate special pension systems within PERS administration, *e.g.*, ORS 237.220 for judge members.

shortly, one additional aspect of the state's contract with state and local public employees deserves mention. Retirement annuity and pension rights under the state's contract with public employees vest absolutely, as property rights of the individual employee, after five years of service. Under ORS 237.111, any employee who is a member of PERS and who has made contributions to the fund for each of five calendar years has a permanent individual account in the fund that:

"shall remain to the employee's credit in the fund * * * and there shall be paid * * * after attaining earliest retirement age, a service retirement allowance * * * which shall consist of:

"(a)   An annuity * * * equivalent of the employee's accumulated contributions and interest thereon credited to the employee;

"(b)   A pension provided by the contributions of employers * * *; and

"(c)   An additional life pension (nonrefund) for prior service * * *."[6]

*The Acceptance.*   In return for the state's promise that retirement benefits, to be paid in the future, would be free of state tax (and for other compensation paid at the time of performance of the service) over 196,000 police, fire fighters, teachers, judges, and other Oregonians have dedicated their working lives to performing useful services for state and local governments.

When those persons entered into employment with state or local government, each person accepted the state's offer. As *Taylor v. Mult. Dep. Sher. Ret. Bd.*, 265 Or 445, 450-51, 510 P2d 339 (1973), states:

"Oregon has joined the ranks of those rejecting the gratuity theory of pensions and has held that contractual rights to a pension can be created between the employee and

_____

[6] *See also* ORS 237.091 (indicating that certain interruptions of service shall not be deemed to break the continuity of the employee's membership in the system). Initially, 10 years' service was required for absolute vesting, ORS 237.110 (1953), but the vesting period was reduced to five years by Oregon Laws 1963, chapter 608, section 2, and was initially enacted as five years for vesting as to judge members of PERS by Oregon Laws 1983, chapter 770, section 7 (but not including members of the old judicial retirement system in *former* ORS 1.312 to 1.380, *repealed by* Or Laws 1991, ch 815, § 21).

the employer. In *Crawford v. Teachers' Ret Fund Ass'n*, 164 Or 77, 99 P2d 729 (1940), we held that a teacher who had already completed the prerequisite duty entitling him to a pension had a vested contractual right thereto which could not thereafter be substantially impaired. In *Adams v. Schrunk*, 6 Or App 580, 488 P2d 831 (1971), *(rev. denied* November 16, 1971), * * * [s]ubsequently, the plan was amended to deny the inclusion of such service. The Court of Appeals thus recognized, as *Crawford* had not, that a contractual right could be established *before the completion* of the service necessary to a pension. We agree with that opinion.

"'* * * * *

"We conclude from the above authorities that Oregon has adopted not only the contractual concept of pensions, but, also, the concept that contractual rights can arise prior to the completion of the service necessary to a pension." (Emphasis in original.)

The state, in this proceeding, agrees that the retirement system and payment of retirement benefits are part of an existing contract. Moreover, 38 Op Att'y Gen 1356, 1365 (Or 1977) (cited by majority, 314 Or at 20-21, opines that the nature of the future payment right is a "vested property interest." As can be seen, under the contract formed by the offer and acceptance, service performed in the present earns retirement benefits to be paid only in the future, at and after retirement. The future benefit payments that one's current work and service earn are computed on the basis of the length of that service and the rate of pay for it, all by contract terms set forth in state law.[7]

---

[7] Government obtained its employees' services less expensively because the gross cost of providing a more nearly adequate pension amount was lowered by the tax exempt nature of the benefit payments and of the contributions put in trust to purchase annuities payable at the time of each employee's future retirement. *See* Legislative Revenue Office Research Report "Taxation of Retirement Income" (1989) (agreeing with this point). Less expense meant that less tax money was exacted from the taxpayers in general over past years to fund a public employee's salary and benefits. Government proposes to keep the benefit of lower cost, but to take away the promise that its employees accepted in order to lower that cost, thereby keeping the benefit of its bargain but depriving the employees of the benefit of theirs.

## RETROACTIVE CHANGE OF
## TERMS OF CONTRACT

*Function of the Change.* Under the holding of *Ragsdale v. Dept. of Rev.*, 312 Or 529, 542, 823 P2d 971 (1992); *Barker v. Kansas*, 503 US ____, 112 S Ct 1619, 118 L Ed 2d 243 (1992); and *Davis v. Michigan Dept. of Treasury*, 489 US 803, 109 S Ct 1500, 103 L Ed 2d 891 (1989), all states are required by federal law to grant the same tax treatment to federal retirees as the state grants to its own and to local government retirees. Before those cases were decided, Oregon state government had exempted state and local public employees' pensions from the state income tax, as its contract with them required, but it had taxed federal retirees' pensions, except for a relatively small threshold amount.

The 1991 Act is an attempt to avoid loss of state revenue derived from the income tax on federal pensions by altering the apparent discrimination in taxation of federal system retirees, discrimination that formed the predicate for the holding of unconstitutionality in *Davis v. Michigan Dept. of Treasury, supra*. In order to continue to obtain tax revenue from retired federal employees' pensions, the 1991 Legislative Assembly enacted a statute that retroactively changed the terms of its contracts with both retired and current employees of state and local government.

*The Retroactive Change.* Or Laws 1991, chapter 823, section 1, amended ORS 237.201 by adding a new subsection 2 to the existing statutory tax exemption contract term. Before the 1991 law change, the exemption read:

"The right of a person to a pension, an annuity or a retirement allowance, to the return of contribution, the pension, annuity or retirement allowance itself, any optional benefit or death benefit, or any other right accrued or accruing to any person under the provisions of ORS 237.001 to 237.315, and the money in the various funds created by ORS 237.271 and 237.281, *shall be exempt from* garnishment and *all state, county and municipal taxes heretofore or hereafter imposed*, except as provided under ORS chapter 118, shall not be subject to execution, garnishment, attachment or any other process or to the operation of any bankruptcy or insolvency law heretofore or hereafter existing or enacted except for execution or other process upon a support obligation or an order or notice entered pursuant to ORS 25.050,

25.060, 25.310, 25.350, 25.360, 25.450, 416.445 or 419.515, and shall be unassignable." ORS 237.201 (emphasis added).

The 1991 change first numbered the pre-existing law, above, as subsection (1) and then added subsection (2), providing as follows:

"(2)   Subsection (1) of this section does not apply to state personal income taxation of amounts paid under ORS 237.001 to 237.315."[8]

Because the existing income tax code mirrored the exemption formerly provided, the tax code was also amended to make it consistent with the new subsection (2) of ORS 237.201. Oregon Laws 1991, chapter 823, section 3(d), provides for repeal from ORS 316.680 of the following language that, previously, had confirmed the tax exemption in ORS 237.201:

"The amount of any payments received from the Public Employes' Retirement Fund under ORS 237.001 to 237.315 which are exempt from state taxation under ORS 237.201."[9]

The content of each of the two changes is identical in its effect. Before the change, PERS benefit payments were exempt from the state income tax. After each of the two changes, PERS payments would no longer be exempt; that is, under the new wording, retirement benefit payments for past services would become taxable by the state income tax.

## CONSTITUTIONS VIOLATED

The acts of the 1991 legislature violate at least two constitutional guarantees and may violate two or more others, not urged by the parties to this case.[10] Failure to enforce the constitution would permit substantial harm to tens of thousands of older Oregonians.

Courts like this one can enforce constitutions. The need for that judicial function impelled the drafters of our constitution to grant courts independent and separate strength *vis-a-vis* other branches of government. When a

---

[8] Retirement or other benefits paid to all PERS members become subject to the state income tax.

[9] The language repealed described one item in a list of items to be subtracted from gross income before arriving at state taxable income.

[10] Of the four violations, the majority discusses only the prohibitions against state laws that impair the obligation of contracts.

court fails to enforce constitutional guarantees, the constitution becomes a dead letter and the court only a debating society.[11]

### ARTICLE I, SECTION 21 VIOLATED; RETIREMENT CONTRACT IMPAIRED

The state constitutional prohibition against government action is plain: "No * * * law impairing the obligation of contracts shall ever be passed." Yet that was the very purpose of the 1991 Pension Taxation Act — to retroactively eliminate the tax-exemption term of the government's contract with public employees.

It is clear that the state's contract is impaired by the retroactive change in the statutory terms of the contract, in violation of the state constitutional provision as it was understood to mean when adopted.

That meaning is to be derived by looking at the meaning of the federal constitutional prohibition against state laws that impaired the obligation of contracts when the Oregon pioneers used that prohibition as the source of the similar one they placed in our state constitution. *Eckles v. State of Oregon*, 306 Or 380, 390, 760 P2d 846 (1988).

The *Eckles* court correctly stated the rule for interpreting Article I, section 21, of the Oregon Constitution as follows:

"[T]he framers of the Oregon Constitution intended to incorporate the substance of the federal provision, as it was then interpreted by the Supreme Court of the United States, into the Oregon Constitution * * *. Subsequent [*i.e.*, after 1859 when Oregon adopted a contract impairment provision in our state constitution patterned on the federal provision] Supreme Court of the United States decisions, of course, do not control the interpretation of section 21, although those decisions may shed light on the early history of the federal

---

[11] As Chief Justice Rehnquist points out in 16 Wilson Quarterly 111, 112 (No. 2, 1992):

"The genius of our system was to create not only a Bill of Rights but also a coequal judiciary, independent of the president and the congress, to enforce those rights. Lofty-sounding declarations mean little in the absence of an institutional structure to give them meaning. *Only an independent judiciary can enforce* individual rights and other *limits on governmental powers.*" (Emphasis added.)

provision, and thereby on the Oregon provision." 306 Or at 390.

Cases decided by the Supreme Court of the United States, before Oregon adopted its constitutional contract impairment prohibition, follow.

In *New Jersey v. Wilson*, 11 US (7 Cranch) 164, 3 L Ed 303 (1812), the New Jersey legislature transferred certain land to a "tribe of Delaware Indians" in full settlement of the tribe's claim to other land in the state. The legislative act provided that that land

"shall not hereafter be subject to any tax, any law, usage or custom to the contrary thereof, in any wise notwithstanding." 11 US (7 Cranch) at 165.

Years later, the legislature passed an act repealing that section of its former act, thereby removing from statute the tax exemption of that land. After a sale of the tribe's land to third parties, an act of the state legislature repealed the tax exemption. The Supreme Court, in an opinion by Chief Justice Marshall held that "[t]his contract is certainly impaired by a law that would annul this essential part of it." *Id.* at 167. The Court held that the act repealing the tax exemption "is repugnant to the constitution of the United States, inasmuch as it impairs the obligation of a contract, and is, on that account, void." *Ibid.*

The Supreme Court made it clear that the constitutional prohibition applied to contract terms entered into by a state itself. In an early case involving a state's contract, that court held: "When a law is in its nature a contract, when absolute rights have vested under that contract, a *repeal* of the law cannot divest those rights * * *." (Emphasis added.) *Fletcher v. Peck*, 10 US (6 Cranch) 87, 135, 3 L Ed 162, 177 (1810).

In *Sturges v. Crowninshield*, 17 US (4 Wheat) 122, 205-06, 4 L Ed 529, 551 (1819), Chief Justice Marshall explained the background for the federal provision protecting contracts from state laws designed to retroactively impair contract obligations:

"A general dissatisfaction with that lax system of legislation which followed the war of our revolution undoubtedly directed the mind of the convention to this subject. It is

probable that laws such as those which have been stated in argument, produced the loudest complaints, were most immediately felt. The attention of the convention, therefore, was particularly directed to paper money, and to acts which enabled the debtor to discharge his debt otherwise than was stipulated in the contract. Had nothing more been intended, nothing more would have been expressed. But, in the opinion of the convention, much more remained to be done. The same mischief might be effected by other means. To restore public confidence completely, it was necessary not only to prohibit the use of particular means by which it might be effected [*e.g.*, states printing their own paper money], but to prohibit the use of any means by which the same mischief might be produced [*i.e.*, state laws impairing obligations of contract]. * * * The constitution therefore declares, that no state shall pass 'any law impairing the obligation of contracts.' "

And in *Trustees of Dartmouth College v. Woodward*, 17 US (4 Wheat) 518, 643, 4 L Ed 629 (1819), Marshall's opinion for that court held that a charter granted by government, in response to which others had acted, was a "contract within the letter of the constitution, and within its spirit also."

The Supreme Court later decided *Ogden v. Saunders*, 25 US (12 Wheat) 213, 6 L Ed 606 (1827). In the initial opinion, filed before reargument, what constituted constitutionally protected obligations, in the context of a private contract and not that of the government, was discussed as follows:

"Again, it is insisted that if the law of the contract forms a part of it, the law itself cannot be repealed without impairing the obligation of the contract. This proposition I must be permitted to deny [in part]. It may be repealed at any time at the will of the legislature, and then it ceases to form any part of those contracts *which may afterwards be entered into*. The repeal is no more void than a new law would be which operates upon contracts to affect their validity, construction, or duration. Both are valid, (if the view which I take of this case be correct) *as they may affect contracts afterwards formed*; *but neither are so, if they bear upon existing contracts*; and, in the former case, in which the repeal contains no enactment, the constitution would *forbid* the application of the repealing law to past contracts and to those only.

"* * * [F]or it has not, and I think it cannot, for a moment, be maintained that a law which, in express terms,

varies the construction of an existing contract, *or which, in repealing a former law, is made to produce the same effect,* does not impair the obligation of that contract." 25 US (12 Wheat) at 260-61 (emphasis added).

Chief Justice Marshall, in a separate opinion, discussed the nature of the contract obligation that could not be impaired constitutionally as follows:

"That there is an essential difference in principle between laws which act on past, and those which act on future contracts; that those of the first description can seldom be justified, while those of the last are proper subjects of ordinary legislative discretion, must be admitted." *Id.* at 334.

As Chief Justice Marshall said, *"The thing forbidden is retroaction." Id.* at 335-36 (emphasis added).

The initial holding in *Ogden* was that a New York state statute providing for bankruptcy, *enacted before a contract of debt was entered into* in that state, formed part of that contract's obligations and, thus, when the debtor took bankruptcy under the statute, that statute could not be an impairment of the "posterior" contract's obligation. The distinction on which the initial opinion in *Ogden* turns is between retrospective and prospective laws; either enactment of a new law or repeal of an old law that changed the validity or effect of an existing contract was a violation of the clause prohibiting impairment of contract because the enactment or repeal operated retrospectively, but not a violation when the enactment or repeal operated prospectively, on contracts formed after the law was passed only.

The final opinion held that state bankruptcy laws, although valid within the state of enactment, could not cross state lines to bind the citizens of other states without their consent. 25 US (12 Wheat) at 369. The Court continued the portion of the holding in its initial opinion that upheld state-adopted bankruptcy laws in the following words:

"That the fair and ordinary exercise of that power by the states does not necessarily involve a violation of the obligation of contracts, *multo fortiori*, of posterior contracts." 25 US (12 Wheat) at 369.

The majority here also appears to rely on *dictum* from *Ogden v. Saunders, supra,* that had no part to play in the actual decision initially, let alone in the different decision rendered after reargument a year later. That reliance is erroneous because the majority overlooks the unanimous view in *Ogden* that repeal of a law, in existence at the time a contract was formed, would unconstitutionally impair the obligation of a contract where the repeal had the effect of varying a term of the contract.

The operation of the federal impairment provision, demonstrated by the foregoing cases, was well known before Oregon adopted its constitution. During the time of territorial status preceding statehood, a decision in the supreme court of the provisional government of Oregon, June term, 1847, held an act of the territorial legislature void as in violation of the guarantee against impairing the obligation of contracts. That decision noted the understanding of the distinction of obligations that a state could not impair, as follows:

> "[A] broad and well defined distinction was made between the contract and the remedy for the enforcement of that contract; and the court held that while the remedy to enforce the obligation of a contract might be modified as the wisdom of the legislature should direct, yet the constitution intended to restore and preserve public confidence completely, by establishing the great principle that the obligation of contracts should be inviolable." *Knighton v. Burns*, 10 Or 549, 551 (Appendix, 1847).

In *Knighton v. Burns, supra,* 10 Or at 551, the Oregon Territorial Supreme Court recognized that "any deviation from the terms of a contract impaired it, and that the objection to a law, on the ground of its impairing the obligation of a contract, could never depend upon the *extent* of the change which the law affects in it." (Emphasis in original.) For this proposition, that court cited *Green v. Biddle*, 21 US (8 Wheat) 1, 5 L Ed 547 (1823) (invalidating, as an impairment of the obligation of contracts, a Kentucky statute that diminished the remedies of land owners against adverse possessors, where the diminishing statute was passed after formation of a "compact" between Virginia and Kentucky wherein those states agreed that rights in land ceded by

Virginia to Kentucky should be determined by Virginia law in effect at the time of formation of the compact).

In *Knighton*, a debt was incurred evidenced by a note calling for payment in cash. *Knighton* held that a statute permitting payment in script, enacted after the debt was incurred, would violate the federal constitution by impairing the obligation of contract, if it were applied to the pre-existing note. The *Knighton* court commented, 10 Or at 551, that:

"the framers of the constitution acted wisely in incorporating this prohibitory clause in that instrument, and that its expounders merit the gratitude of the nation for having had the firmness to give to it such construction as affords an ample remedy for the consequences which must otherwise result from the temporary expedients of legislators."

Only one recent opinion of our court turns on interpretation of the contract clause. It holds that a statute that changes the terms of an existing contract impairs the obligations of the contract in violation of Article I, section 21. In *Eckles v. State of Oregon, supra*, 306 Or at 403, the court held:

"The state is not obliged by Article I, section 21, to return the funds to the IAF, but the circuit court erred in not awarding plaintiff a declaratory judgment that section four of the Transfer Act is unconstitutional insofar as it affects employers with SAIF insurance contracts *that were in existence on or before the date* of the enactment of the Transfer Act." (Emphasis added.)

The *Eckles* majority held that another section of the Transfer Act legislation in question in that case, section 2, merely directing the state treasurer to transfer funds from the IAF account to the state's general fund but not purporting to change any law, either retroactively or prospectively, did not offend the impairment clause.

The majority of the court in *Eckles* distinguished the section found unconstitutional from the section not so found, as follows:

"Unlike section four of the Act, however, section two *does not alter retroactively* the terms of that contract." 306 Or at 402 (emphasis added).

Adding to the significance of the distinction between laws acting retroactively on existing contracts and those acting

prospectively on future contracts, the *Eckles* majority also explained that a new law that "alter[s] retroactively the terms of that contract," (*i.e.*, terms of "contracts that were in existence before the effective date of the enactment") is "unconstitutional insofar as it affects" those terms. 306 Or at 402-03.

That description exactly fits each of the two 1991 changes in tax exemption law. Each affected the tax exemption of pensions that applied to each employee's vested retirement contract. Therefore, the ground of distinction employed in *Eckles*, to explain why one section of the 1982 Transfer Act violated the constitution while another section did not, is not available in the present case because sections 1 and 3 each have the identical retroactive effect of taxing benefit payments, when the right to receive the payments had vested and accrued, on account of services that were performed during a time when the statutory contract provided that the benefits were to be exempt from taxes. *See United States Trust Co. v. New Jersey,* 431 US 1, 18-19, 97 S Ct 1505, 52 L Ed 2d 92 (1977) (holding unconstitutional, under the federal constitution's impairment clause, state legislative repeal in 1974 of a statutory covenant enacted in 1962 on the basis of which loans had been made to the state between 1962 and 1974); *King v. Dedham Bank,* 15 Mass 447, 454 (1819) (holding that once a contract is formed, a court "cannot give it a different construction in consequence of the statute which was afterwards passed"). Once the employment contract was entered into containing the tax exempt retirement benefits term, the constitution of the state placed it beyond legislative control.

In this case, section 3 of the 1991 Act, repealing the tax exemption for PERS benefit and payment rights that accrued before that Act became effective, does alter retroactively the terms of the contract with public employees.[12] The

---

[12] Oregon Laws 1989, chapter 906, referred to and rejected by the voters in 1990, contained repealers of the state income tax exemption covering PERS benefits like those repealers of that exemption now found in sections 1 and 3 of Oregon Laws 1991, chapter 823. But the funding mechanism to repay a fraction of the PERS pension benefits, that would have been lost by each retiree to state taxation, used a different source of money. The 1989 Act tapped the state general fund, itself derived from state income taxes and other state revenues. The 1991 Act uses the money belonging to all present and future PERS retirees in the PERS trust funds to repay a minor *fraction* of the dollar amounts they lose because of subjecting PERS

following chart illustrates that the *Eckles* distinction concerning the 1982 Transfer Act does not apply to the 1991 Pension Taxation Act.

| 1982 Transfer Act | 1991 Pension Taxation Act |
|---|---|
| Section 4: Amended retroactively a statute controlling expenditure of SAIF "surplus" funds. | Section 1: repeals state income tax exemption for PERS benefits. |
| Section 2: Directed Treasurer to transfer dollars from SAIF account to state general fund account. | Section 3: repeals state income tax exemption (by subtraction from taxable income) of PERS benefits. |

The present case is clearly distinguishable from the part of *Eckles* that held that one section of the 1982 Act there considered did not violate Article I, section 21. Differences include:

1. In *Eckles*, no *term* of contract provided that a dividend would ever be declared, let alone one providing a dividend in any certain amount or providing any method to ascertain an amount of any future dividend. In the present case, a retired member receives a fixed minimum monthly amount, an amount already determined at the time of retirement.

2. In *Eckles*, no statute and no other contract term in evidence required that dividends (refunds) must be paid. Whether to pay, when to pay, and the rate or amount to pay, were always optional with the Board of Directors of SAIF. Not so for retirement contracts in the present case. Here the monthly payment amount is fixed at the time of retirement, based on provisions of the pre-existing contract enacted in statute and on options selected by the retiree.

3. There was no set time in *Eckles*, at which the claimed contract right to a dividend payable out of surplus had become or would become certain and fixed in amount. Thus

retirement payments to state taxation.

Of course future retirement benefits are diminished by paying for the "increase," because the funds to pay the added percentage come from one or another of the retirees' $12.5 billion trust funds, a fund itself expressly subject to the tax exemption promise of ORS 237.201.

one could not say, in *Eckles*, that removing the $81 million worked any specific amount of retroactive change in any individual contract, as one can say in the present case as to each retiree.

These grounds of distinction are totally consistent with and supported by the several pronouncements of the *Eckles* court that:

(1) "Plaintiff does not point to any obligation of SAIF that SAIF *has been* excused from performing by virtue of the Act." 306 Or at 389 (emphasis added).

(2) "Unlike section four of the Act, however, section two *does not alter retroactively the terms of that contract.*" *Id.* at 402 (emphasis added).

(3) "Insured employers may benefit from premium reductions and dividends drawn from surplus IAF funds. * * * These benefits are set in the 'discretion' of SAIF. That 'discretion' does not preclude a showing that insured employers were harmed by the transfer, but the existence of that harm cannot be presumed." *Id.* at 402 n 24.

(4) "[There is] no showing that the transfer of funds * * * caused some harm to [plaintiffs'] contractual interest." *Id.* at 403.

(5) "[T]he state cannot avoid a constitutional command by 'balancing' it against another of the state's interests or obligations, such as protection of the 'vital interests' of the people." *Id.* at 399.[13]

Under the foregoing authorities, chapter 823, altering existing contract obligations, cannot stand. Or Const, Art I, § 21. Sections 1 and 3 of the 1991 Act are void as to previously accrued rights to future PERS retirement payments based on work performed before the effective date of the 1991 Act.[14]

---

[13] *See also Oregonian Publishing Co. v. O'Leary*, 303 Or 297, 305, 736 P2d 173 (1987) ("The government cannot avoid a constitutional command by 'balancing' it against another of its obligations").

Even if the analogy to the holding portion of *Eckles* were correct, that would be a poor case to follow on that point. In *Eckles*, state government, acting as a trustee, converted to its own use $81 million, successfully avoided returning even one dollar to its rightful owners, and left the beneficial owners without court enforcement of their rights. *See also Frohnmayer v. SAIF*, 294 Or 570, 660 P2d 1061 (1983) (denying SAIF independent access to the courts).

[14] Note 27 of the majority opinion, 314 Or at 21, also supports the proposition that both section 1 and section 3 impair the obligations of the PERS members' retirement contracts. The disavowal attempted by use of adjectives, calling the tax

## OTHER CONSTITUTIONAL VIOLATIONS

*Federal Contracts Clause, Article 1, Section 10.* In *United States Trust Co. v. New Jersey, supra,* a state agency borrowed money. A 1962 statutory covenant related to that borrowing transaction promised that certain reserves and revenues would not be used for any other purpose. Those reserves and revenues were pledged as security for bonds to be issued after the covenant was enacted. In 1974, the legislature repealed the statutory covenant. The Supreme Court of the United States explained that the 1974 act impaired the contract under which the money was loaned between 1962 and 1974. The state law was declared void.[15]

The majority fails to give force to the facts or the holding in *United States Trust Co. v. New Jersey, supra,* that the state law diminishing security promised by the state for repayment of bond borrowing by repealing that promise violated the impairment of contracts clause. The majority relegates this case, adverse to its view, to a *"see generally"* cite supporting only the proposition that current federal court analysis of the federal clause differs from current Oregon analysis of the Oregon clause. 314 Or at 35 n 39. The law struck down in *United States Trust Co. v. New Jersey* let the state off the hook, partially, as does section 3 of the 1991 Oregon Act. Section 3 is unconstitutional under the federal constitution. I dissent from the majority's failure to so hold.[16]

---

exemption in ORS chapter 316 "isolated" and "a general" statute, 314 Or at 22, does not overcome the reasoning of note 27.

[15] The rule of *United States Trust Co. v. New Jersey, supra,* would apply to tax exemption contracts. As *Stone v. Mississippi,* 101 US (11 Otto) 814, 820, 5 L Ed 1079 (1880), states:

"All that has been determined thus far is, for a consideration it [government] may, in the exercise of reasonable discretion, and for the public good, surrender a part of its powers in this particular [*i.e.,* by contract granting an exemption from taxation]."

[16] The majority cites two federal cases to support that failure. 314 Or at 35. In *Brown v. Colorado,* 106 US (16 Otto) 95, 27 L Ed 132 (1882), the Court said:

"Neither does the record show that a decision was rendered below in favor of the validity of any law of Colorado, impairing the obligation of a contract. No such question was presented by the pleading, and the rulings do not indicate that anything of the kind was brought to the attention of the court * * *." 106 US (16 Otto) at 98.

In *Indiana Ex Rel. Anderson v. Brand*, 303 US 95, 104-05, 58 S Ct 443, 82 L Ed 685, 693 (1937), a statute of Indiana, granting a teacher tenured status after five years' employment, was referred to and made part of a teacher's contract. The statute included a term that limited the conditions under which the teacher's employment could be terminated. Thereafter, the statute was repealed and the district discharged a teacher who had served more than five years without recognizing her contract right to tenure. The Court held that repeal of the Indiana teacher tenure statute impaired the obligation of contract in *violation* of Article I, section 10, of the federal constitution.

The constitution's force — prohibiting a state from passing a law impairing the obligation of contract — does not depend on the question whether state government may choose to "breach the contract" by ignoring its statutorily manifested promises to public employees. When the state must, as it must here, pass a law in order to avoid the terms of its pre-existing contract, the impairment of obligations clauses of both the state and federal constitutions are violated. In such case, it is not just a breach, but an effort to eliminate or diminish the obligation, thereby violating each constitution. Where the government is one of the contracting parties, where there is no public policy or regulatory purpose, and where the government must pass a new law in order to avoid a substantial obligation of the government's contract, stated in the law existing at the time the contract was formed, the constitutions are violated. *United States Trust Co. v. New Jersey, supra*. As Chief Justice Marshall said in *Sturges v. Crowninshield, supra*, 17 US (4 Wheat) at 206, the contract impairment clause was drafted "to prohibit the use of any

---

Likewise, in *Hays v. Port of Seattle*, 251 US 233, 237, 40 S Ct 125, 64 L Ed 243, 246 (1920), the Court stated:

"Had the legislature of Washington, pending performance or after complete performance by complainant, passed an act to alter materially the scope of his contract, *to diminish his compensation*, or to defeat his lien upon the filled lands, there would no doubt have been an attempted impairment of the obligation. The legislation in question had no such purpose or effect. It simply, after seventeen years of delay without substantial performance of the contract, provided that the project should be abandoned and title to the public lands turned over to the municipality." *Ibid.* (emphasis added).

Obviously, neither case holds what the majority cites both cases for. 314 Or at 35.

means [by state government] by which the same mischief [of impairing contract obligations] might be produced."

## THE REMEDY FOR THE CONSTITUTIONAL WRONGS

Oregon Laws 1991, chapter 796, section 15(1), provides in part:

"If the Supreme Court determines that such taxation violates constitutional provisions, the Supreme Court may, in its discretion, fashion an appropriate remedy."

I concur that the PERS pension benefits "may not be taxed." 314 Or at 31.[17]

To defend the constitution, I declare sections 1 and 3 of Oregon Laws 1991, chapter 823, The Retirement Taxation Act, void, invalid, and impermissible. I dissent from the majority's failure to do so as to section 3. If necessary, I would

---

[17] Injunctive relief also is as available as any other remedy against public officials for violations of private rights, *Wiegand v. West*, 73 Or 249, 254, 144 P 481 (1914), and is appropriate to prevent collection of prohibited taxation. *Enterprise Ir. Dist. v. Enterprise Co.*, 137 Or 468, 473, 300 P 507 (1931) (court has equitable power to restrain collection of tax where tax is not authorized, or is imposed on property not subject to tax); *Dant & Russell, Inc. v. Pierce*, 122 Or 337, 345, 255 P 603 (1927) (equity is appropriate to enjoin collection of tax which is already paid). Injunctions are peculiarly appropriate to prevent both multiple and successive suits such as are probable in this case. *Eldridge v. Johnston*, 195 Or 379, 411, 245 P2d 239 (1952); *see also Micelli v. Andrus*, 61 Or 78, 89, 120 P 737 (1912) (injunction appropriate to prevent "reasonably apprehended" repetition of damages from trespass). Injunctions are appropriate where the government threatens to enforce a void law, *Alum. Utensil Co. v. North Bend*, 210 Or 412, 423, 311 P2d 464 (1957) ("It is clear that this court is committed to the rule that if the threatened enforcement of a void ordinance will affect the property rights of a party, injunction will lie to prevent the threatened menace from occurring."), and where irreparable damages will otherwise occur, *Bernard v. Willamette Box & Lumber Co.*, 64 Or 223, 233, 129 P 1039 (1913) ("The term 'irreparable damages,' to prevent which injunction may issue, includes wrongs of a repeated and continuing character, or which occasion damages that are estimable only by conjecture, and not by any accurate standard."). *See Hickman v. Six Dimen. Cust. Homes*, 273 Or 894, 543 P2d 1043 (1975) (court in its discretion may grant injunction based on justice and equity of case).

Injunction is also the appropriate remedy for the federal constitutional violation. *See Union P. R.R. v. Weld County*, 247 US 282, 287, 38 S Ct 510, 62 L Ed 1110, 1117 (1917) (reversing lower court's refusal to grant injunction against collection of an allegedly illegal tax where the existence of an adequate remedy, by action at law for a refund of taxes, after payment, is "debatable or uncertain"); *United States v. Osage County*, 251 US 128, 134, 40 S Ct 100, 64 L Ed 184, 187 (1919) (finding adequate grounds for injunctive relief against local tax exactions where there was systematic and intentional disregard of law by state officers for the purpose of destroying the rights of a whole class of persons that was "subject to the protection of the United States").

enjoin any threatened taxation in contravention of the government's promise to never tax PERS retirement payments.

**PETERSON, J.,** dissenting.

A state legislature's most basic power is the power to enact laws. A corollary to that power, but equally important, is the power to repeal laws that it has enacted. At the heart of the power to govern is a third power, the power to levy taxes. As a general rule, one legislature cannot bind a later legislature.

The majority states that, because the tax exemption was enacted "as part and parcel of the Public Employes' Retirement Act of 1953," it follows that "*former* ORS 237.201 is a term of the larger PERS contract." 314 Or at 25. I disagree for these reasons:

1. In order to find that the legislature intended to permanently bargain away its power to tax, that intention must be unmistakably clear. Inclusion of a tax exemption with other statutes that create a contract is not sufficient to establish the requisite legislative intent to create a permanent tax exemption.

2. The legislature, in 1945, 1953, and 1969, did not intend to contract with PERS employees to create a permanent tax exemption.

3. Legislative action in subsequent sessions, particularly in 1971, shows that the legislature did not believe that the power to tax had been contracted away.

**1. In order to find that the legislature intended to permanently bargain away its power to tax, that intention must be unmistakably clear. Inclusion of a tax exemption with other statutes that create a contract is not sufficient to establish the requisite legislative intent to create a permanent tax exemption.**

Both this court and the Supreme Court of the United States have held that a state cannot contract away its eminent domain power or its police power. *See West River Bridge Co. v. Dix*, 47 US (6 How) 507, 12 L Ed 535 (1848) (a state may not contract away its eminent domain); *Boyd v. Alabama*, 94 US (4 Otto) 645, 650, 24 L Ed 302 (1876) (a state cannot

contract away its police power); *Eckles v. State of Oregon*, 306 Or 380, 397-98, 760 P2d 846 (1988) (the state cannot contract away its eminent domain power or its police power), *appeal dismissed* 490 US 1032 (1989). The Supreme Court of the United States has not stated a similar prohibition against a state's permanently impairing its power to tax. Unquestionably, the early decisions of the Court upheld the power of states to contract away the power to tax. However, the Court has applied a strict rule of construction against finding an irrepealable tax exemption. *Wisconsin & Michigan Ry. Co. v. Powers*, 191 US 379, 24 S Ct 107, 48 L Ed 229 (1903); *Covington v. Kentucky*, 173 US 231, 19 S Ct 83, 43 L Ed 679 (1899). No decision of the Supreme Court of the United States in the last 100 years has upheld an irrepealable tax exemption.

Precedents of this court and the Supreme Court of the United States suggest this strict rule of construction concerning irrevocable tax exemptions: When a tax exemption is included with other legislation that does create a contract, the intention to create an irrevocable tax exemption must be so clearly and unambiguously shown that there can be no doubt about the legislature's intention.

In *Eckles v. State of Oregon, supra*, 306 Or at 390, this court concluded that Article I, section 21, of the Oregon Constitution, applied to contracts made by the state as well as to contracts between private parties. In reaching that conclusion, the court noted that Article I, section 21, had its origins in the federal Contract Clause, Article I, section 10, clause 1, of the United States Constitution, and that the federal Contract Clause had been interpreted to encompass state contracts prior to the adoption of the Oregon Constitution in 1859. *Id.* at 389-90. The significance of that conclusion is that the Oregon Contract Clause may prevent a later legislature from amending or repealing earlier legislation if that legislation is in the nature of a contract. *See Fletcher v. Peck*, 10 US (6 Cranch) 87, 135, 3 L Ed 162 (1810) ("When, then, a law is in its nature a contract, a repeal of the law cannot divest those rights").

Because a determination that the legislature intended to contract away the power of future legislatures and of the people to legislate concerning a particular issue

results in a diminution of sovereign power, this court is unwilling to find an intent to create a contract absent an unambiguous expression of intent to do so from the legislature. *Eckles v. State of Oregon, supra,* 306 Or at 397. In *Eckles*, the plaintiffs claimed that a 1982 law authorizing the transfer of money from the Industrial Accident Fund (IAF) to the General Fund violated Article I, section 21, of the Oregon Constitution, because the law creating the IAF contractually obligated the state not to assert any proprietary interest in the IAF. In determining whether the legislative act creating the IAF was a contract, the court stated this rule of construction:

> "[A] state contract will not be inferred from legislation that does not unambiguously express an intention to create a contract. [Citing cases.] Although the rule is concerned with the existence of a contractual agreement, rather than with the extent of the obligation created by an agreement, the effect of the rule is to eliminate the state's contractual obligation *whenever there is doubt concerning the agreement." Id.* at 397 (emphasis added).

*Accord Campbell v. Aldrich,* 159 Or 208, 213-14, 79 P2d 257 ("the intention of the legislature thus to create contractual obligations, resulting in extinguishment to a certain extent of governmental powers, *must clearly and unmistakably appear"* (emphasis added)), *appeal dismissed* 305 US 559 (1938); *United States Trust Co. v. New Jersey,* 431 US 1, 17 n 14, 97 S Ct 1505, 52 L Ed 2d 92 (1977); *Charles River Bridge v. Warren Bridge,* 36 US (11 Pet) 420, 544, 9 L Ed 773 (1837).

*Eckles* stated the general rule — a state contract will not be inferred from legislation that does not unambiguously express an intention to create a contract — and then listed other special rules concerning state contracts inferred from legislation. *Eckles v. State of Oregon, supra,* 306 Or at 397-99. Those special rules include the rules that the state's power of eminent domain is not limited by the Contract Clause and that the state may not contract away its "police power." *Id.* at 397-98. *Eckles* also suggested that there may be other special rules within the language and history of Article I, section 21. *Id.* at 399. Another such special rule is that, because the power of a government to tax is at the core of governmental power, legislative intent to relinquish the power to tax must

be so clearly and unambiguously expressed as to leave no room for doubt.[1]

As early as 1893, this court, in *dictum*, stated that the better rule may be that "the legislature has *no* right to bargain away the taxing power of the state so as to place it beyond the control of succeeding legislatures." *Hogg v. McKay*, 23 Or 339, 341, 31 P 779 (1893) (emphasis added). Five years later, in *Ladd v. City of Portland*, 32 Or 271, 275, 51 P 654 (1898), which concerned the power of a city to tax for street improvements, the court stated that the power to tax "is 'never presumed to be relinquished unless the intention to relinquish is declared in clear and unequivocal terms.'" (quoting from *Philadelphia, Wilmington and Baltimore Railroad Co. v. Maryland*, 51 US (10 How) 376, 393, 13 L Ed 461 (1850)). The Supreme Court of the United States has long applied a rule of strict construction against irrepealable tax exemptions; a legislature's intent to contract away its taxing power must be *free from all doubt*. In *Providence Bank v. Billings*, 29 US (4 Pet) 514, 561, 7 L Ed 939 (1830), Chief Justice Marshall stated:

> "That the taxing power is of vital importance; that it is essential to the existence of government; are truths which it cannot be necessary to re-affirm. They are acknowledged and asserted by all. It would seem, that the relinquishment of such a power is never to be presumed. We will not say, that a state may not relinquish it; that a consideration sufficiently valuable to induce a partial release of it, may not exist: but as the whole community is interested in retaining it undiminished; that community has a right to insist, that its abandonment ought not to be presumed, in a case in which the deliberate purpose of the state to abandon it does not appear."

In the Court's December 1850 term, it reiterated that "the taxing power of a State is never presumed to be relinquished unless the intention to relinquish is declared in clear and unambiguous terms." *Philadelphia, Wilmington and Baltimore Railroad Co. v. Maryland, supra*, 51 US (10 How) at 393, *quoted with approval in Ladd v. City of Portland, supra*,

---

[1] Because of the essential nature of the power of taxation, the general rule for construing tax exemptions is that they are construed strictly in favor of the state's power to tax and against the taxpayer's right to be free from tax. *Santiam Fish & Game Ass'n v. Tax Com.*, 229 Or 506, 516, 368 P2d 401 (1962).

32 Or at 275; *see also Vicksburg, Shreveport and Pacific Railroad Co. v. Dennis*, 116 US 665, 668, 6 S Ct 625, 29 L Ed 770 (1886) (noting that the quoted "rule has been strictly upheld and constantly reaffirmed in every variety of expression").

Concerning the type of showing that must be made to establish an irrepealable tax exemption, the Supreme Court of the United States in *Covington v. Kentucky, supra*, 173 US at 239, a case involving the federal Contract Clause, stated:

"Before a statute — particularly one relating to taxation — should be held to be irrepealable, or not subject to amendment, an intent not to repeal or amend must be so directly and unmistakably expressed as to leave no room for doubt; otherwise, the intent is not plainly expressed. It is not so expressed when the existence of the intent arises only from inference or conjecture."

Given the similarity of the Oregon and federal Contract Clauses, *Covington* is persuasive authority for the proposition that only the most explicit language will suffice to create an irrevocable statutory tax exemption.[2] And *Eckles v. State of Oregon, supra*, 306 Or at 390-91, 397, which enunciates essentially the same standard, *is* binding authority.

I do not dispute that the state has the power to contract away its power to tax. The question is what is required for the state to create a permanent contractual tax exemption. The answer to that question is that the legislation must evidence more than a clear and unambiguous *general* intent to create a contract; a specific intent to create a permanent tax exemption as a term of the contract must be shown. The intent must be so clearly and unambiguously expressed as to leave no room for doubt that the legislature intended to contract away the taxing power, one of the core legislative powers reserved to the people and future legislatures by Article IV, section 1, of the Oregon Constitution.

_____

[2] More recently, the Supreme Court restated the proposition in this way: " 'The power of taxation is never to be regarded as surrendered or bargained away if there is room for rational doubt as to the purpose.' " *Atlantic Coast Line v. Phillips*, 332 US 168, 172, 67 S Ct 1584, 91 L Ed 2d 1977 (1947) (quoting *Wright v. Georgia Railroad & Banking Co.*, 216 US 420, 438, 30 S Ct 242, 54 L Ed 2d 544 (1910)).

Consistent with *Eckles*, this strict rule against finding irrepealable tax exemptions is a special rule limiting the application of the Contract Clause in a manner consonant with the language and history of Article I, section 21.

## 2. The legislature, in 1945, 1953, and 1969, did not intend to contract with PERS employees to create a permanent tax exemption.

In deciding whether Oregon Laws 1991, chapter 823, impairs the obligation of a contract, the court first must determine whether ORS 237.201, prior to the 1991 amendment, was a term of a contract between the state and PERS employees. The question is whether the legislature, in 1945, 1953, or 1969, intended to bind itself and future legislatures and the voters, by a statutory contract, to permanently exempt retirement income of all current and former state and local public employees from state income tax, effectively relinquishing its ability to exercise this core legislative authority.

In 1945, the legislature enacted the Public Employes' Retirement Act (1945 Act), Or Laws 1945, ch 401, the precursor to the present PERS laws. Section 23 of the 1945 Act provided:

> "The right of a person to a pension, an annuity, or a retirement allowance, to the return of contribution, the pension, annuity, or retirement allowance itself, any optional benefit or death benefit, or any other right accrued or accruing to any person under the provisions of this act, and the money in the various funds created by the act, shall be exempt from all state, county, and municipal taxes and shall not be subject to execution, garnishment, attachment, or any other process or the operation of any bankruptcy or insolvency law, and shall be unassignable." Or Laws 1945, ch 401, § 23.

Section 23 describes four attributes of the retirement benefits provided by the 1945 Act: (1) they "shall be exempt from all state, county, and municipal taxes"; (2) they "shall not be subject to execution, garnishment, attachment, or any other process"; (3) they "shall not be subject to * * * the operation of any bankruptcy or insolvency law"; and (4) they "shall be unassignable."

Although the use of the mandatory "shall" is indicative of the strength of the legislature's intent regarding those four attributes, the language of section 23, the exemption provision, does not clearly and unambiguously express an intention not to allow repeal or amendment. Certainly, it is plausible to infer that the tax exemption is like other financial benefits that petitioners derive from their state employment contracts. But the conclusion that the tax exemption is contractual must rest upon more than that. The legislature's intention must be so clear and unambiguous as to leave no room for doubt. The placement of the exemption in section 23 among other provisions that have little or nothing to do with monetary benefits that might be the subject of a contract suggests that the exemption was not intended to be contractual.[3]

There is no legislative history available concerning the 1945 legislature's intention. At the time, the prevailing view of government employee pensions was that pensions were gratuities given through the beneficence of the sovereign and could be modified or eliminated at the will of the sovereign. *See Crawford v. Teachers' Ret. Fund Ass'n*, 164 Or 77, 87, 88, 99 P2d 729 (1940) ("There is a sound distinction between a 'pension' and an 'annuity' "; the former "is always subject to legislative control"); *see also* Annot, 52 ALR2d 437 (1957) (noting that, in 1957, the prevailing view was that both contributory and noncontributory public pensions were subject to legislative modification or elimination, but also noting that some states were beginning to recognize vested pension rights in contributory plans upon completion of the plan's

---

[3] Exemptions from taxation and execution or other process are not unusual. The Oregon Revised Statutes are sprinkled with such exemptions. *See, e.g.*, ORS 23.170 (pensions exempt from execution and other process); ORS 316.758 and 316.765 (income tax exemption for the severely disabled); ORS 656.234 (workers' compensation benefits generally exempt from execution or other process); ORS 657.855 (unemployment compensation exempt from execution); ORS 748.207 (benefits payable by fraternal benefit societies exempt from attachment, garnishment, or other process). Although such exemptions, like the exemption for PERS benefits, have economic value to the beneficiaries, that fact does not make them contractual. Given the similarities between those many noncontractual exemptions noted above and the exemptions for PERS benefits, the mere fact that the PERS exemptions are contained in legislation that created other contractual rights is not sufficient to establish a clear and unambiguous intent to contract with respect to the tax exemption and other exemptions.

requirements). Even though pension benefits now are considered to be contractual, it is certainly not clear or unambiguous from the language or context of the 1945 Act that the legislature intended to make the tax exemption a term of state employees' contracts.

In 1953, the legislature repealed the 1945 Act, Or Laws 1953, ch 180, §§ 2 and 18, and subsequently enacted the Public Employes' Retirement Act of 1953 (1953 Act). Or Laws 1953, ch 200. In creating the present PERS scheme, the legislature included in the 1953 Act a provision with language identical to section 23 of the 1945 Act. Or Laws 1953, ch 200, § 22. Section 22 of the 1953 Act retained the same four attributes for benefits provided in the 1945 Act. The next inquiry is whether the 1953 legislature, in creating the present PERS scheme, intended to contract away the state's power to repeal the tax exemption contained in section 22 of the 1953 Act.

Because the operative language of the exemption provision in the 1953 Act is identical to the language of the 1945 Act — which did not express a clear and unambiguous intention to create a contract for a tax exemption — the existence of such an intent must be found elsewhere, if at all. The majority relies on an opinion of the Attorney General issued prior to the repeal of the 1945 Act. The majority notes that the 1953 legislature enacted ORS 237.950 to 237.980, which preserved the accrued benefits of state employees, in the process of liquidating the pre-1953 retirement system. It concludes that the legislature believed that the pre-1953 system contained enforceable contract rights and thus protected those rights, including the right to a tax exemption. From that premise, the majority decides that the 1953 legislature intended the tax exemption to continue as a contract right when it re-enacted that system without substantial modification. 314 Or at 18-20.

There is no question but that the policy of the state in 1953, as it was in 1945, was that the retirement benefits of state employees should be exempt from state and local taxation. But that is largely irrelevant to the issue before us. The question is whether the 1953 legislature without doubt intended to contract away the power of future legislatures to declare a different taxation policy that might be more appropriate in different circumstances. Even assuming that the

1953 legislature was aware of the Attorney General's opinion and on that basis intended generally that PERS benefits would be contractual rather than gratuitous, there is no basis for concluding that the legislature clearly and unambiguously intended to include the income tax exemption for those benefits as part of that contract, not to be modified by any subsequent legislature. *The Attorney General's opinion makes no reference to the tax-exempt status of the pre-1953 benefits.* The legislative preservation of the tax exempt status of pre-1953 benefits and provision for a continued tax exemption for PERS benefits is understandable given the then-prevailing policy that state employees' retirement benefits should be free from state and local taxation. The "shall be exempt" language of section 22 of the 1953 Act, ORS 237.201, is nothing more than a shorthand way of saying "are exempt while this statute remains in effect."

There is much doubt concerning the legislature's intent to create, in 1945 or 1953, a permanent tax exemption. There is no doubt as to the legislature's intent in 1969 when it further amended ORS 237.201. Or Laws 1969, ch 640, § 13. After the 1969 amendment, the statute provided:

> "The right of a person to a pension, an annuity or a retirement allowance, or to the return of contribution, the pension, annuity or retirement allowance itself, any optional benefit or death benefit, or any other right accrued or accruing to any person under the provisions of ORS 237.001 to 237.315, and the money in the various funds created by ORS 237.271 and 237.281, shall be exempt from all state, county and municipal taxes *heretofore or hereafter imposed*, shall not be subject to execution, garnishment, attachment or any other process or the operation of any bankruptcy or insolvency law *heretofore or hereafter existing or enacted*, and shall be unassignable." ORS 237.201 (1969) (added language emphasized).

Although the additional language might be read as promising a permanent tax exemption, the events and legislative history of the 1969 amendment contradict such a conclusion and strongly support the conclusion that the legislature was merely trying to make it clear that the exemption was not to be amended *sub silentio*.

The 1969 legislative history shows that the language added to ORS 237.201 was intended to prevent courts from

interpreting tax statutes enacted between 1953 and 1969 and thereafter as impliedly repealing the earlier enacted PERS tax exemption and thereby subjecting otherwise exempt benefits to their provisions. Rather than evidencing an intent to contract away the state's taxing power, the 1969 amendment is more appropriately interpreted as clarifying the scope of the statutory income tax exemption. There is nothing in the legislative history to suggest that the legislature intended to grant a virtually *permanent* tax exemption to all PERS employees and retirees.

The legislative history shows that the 1969 amendment at issue stemmed from a recent circuit court decision holding that PERS retirement benefits were subject to state inheritance tax because the state inheritance tax law had been enacted subsequent in time to the retirement law. Max Manchester, the executive secretary of the Public Employees' Retirement Board, sent legislative counsel a list of proposed changes. Number 5 on the list states:

> "ORS 237.201 says retirement benefits not subject to state tax. Circuit court has said retirement benefits subject to state inheritance tax because inheritance tax is later than retirement law. Make clear that retirement benefits exempt from all state and local taxes, not dependent upon when statutes enacted."

In order to make clear that retirement benefits would be exempt from all state and local taxes, even though the tax law was enacted later, the legislature amended ORS 237.201.

Far from suggesting that the 1969 amendment was intended to create a contractual obligation that would bar any future imposition of income tax, the 1969 amendments were intended only to clarify that the ORS 237.201 exemption was not limited to taxes that existed at the time it was enacted. If anything, the 1969 legislation confirms continuing legislative power to control the taxability of PERS retirement benefits, not a legislative decision irrevocably to relinquish such power.

**3. Legislative action in subsequent sessions, particularly in 1971, shows that the legislature did not believe that the power to tax had been contracted away.**

Two years after the 1969 amendment, the legislature amended ORS 237.201 to make PERS retirement benefits subject to the inheritance tax. Or Laws 1971, ch 732, § 3. Eight years after that, the 1979 legislature amended ORS 237.201 to make PERS retirement benefits subject to "executions or other process arising out of a support obligation or an order entered pursuant to ORS 23.777 to 23.783." Or Laws 1979, ch 85, § 2. And, in 1985, the legislature amended ORS 237.201 to make PERS benefits subject to additional support obligations. Or Laws 1985, ch 671, § 9. Concededly, actions of the legislature in 1971, 1979, or 1985 do not determine what was the 1969 legislature's intent. Nonetheless, these changes — particularly the 1971 changes — are relevant, for they show that subsequent legislatures viewed ORS 237.201 as described above — subject to amendment to enlarge or restrict the tax liability or other attributes of PERS benefits as the legislature decided was appropriate.

## Conclusion

In sum, after examining the 1945, 1953, and 1969 legislation concerning the tax exemption for PERS benefits, I conclude that none of that legislation evidences a clear and unambiguous intent to contract away the sovereign power of taxation of future legislatures and the voters. I do not deny that the language added in 1969 evidences a strong legislative intent regarding the exemption *at that time*. However, that is not the issue. Rather, the issue is whether the legislature ever has clearly and unambiguously expressed an intention to create a *permanent* tax exemption. With but one obvious substitution, the conclusion of the Supreme Court of the United States in *Covington v. Kentucky, supra,* — interpreting a statute that provided that certain property "shall be and remain, forever exempt from state, county, and city tax," 173 US at 233 — is equally apropos here:

> "The utmost that can be said is that it may be inferred from the terms in which the exemption was declared, that the legislature had no purpose at the time the act of [1945, 1953, or 1969] was passed to withdraw the exemption from taxation; not that the power reserved would never be exerted, so far as taxation was concerned, if in the judgment of the legislature the public interests required that to be done." *Id.* at 239.

I am not persuaded by the majority's argument that, because PERS creates contractual rights and the tax exemption is within the PERS statutes, the exemption necessarily is a term of the state's contracts with its employees. Granted, there is some resonance to that argument, given that the tax exemption has economic value to state employees, like other provisions setting the amount and duration of PERS benefits. Nonetheless, given the heightened standard for finding a contractual tax exemption, the mere placement of the tax exemption in a law that creates other contractual rights is not sufficient evidence of the necessary intent. *Taken to its logical conclusion, the majority's approach would require the legislature to disavow affirmatively any intent to create a contractual right to a tax exemption when it included the exemption within the PERS law.* Today, the PERS law, ORS 237.001 to 237.315, fills more than 58 pages in the Oregon Revised Statutes. It has been amended at every regular legislative session since 1945. Given the majority opinion, what must future legislatures do to make it clear that any (or some) changes are not intended to be contractual?

The 19th century decisions of the Supreme Court of the United States involving tax exemptions granted in corporate charters are not to the contrary. In the early part of the 19th century, the Court held that the issuance of a charter by a state legislature created a contract between the state and the entity availing itself of the charter. *Trustees of Dartmouth College v. Woodward*, 17 US (4 Wheat) 518, 4 L Ed 629 (1819). The required clear and unambiguous intention was easily shown. In those days, a charter was a contract with the sovereign. The tax exemption was indisputably a part of the contract. In many cases it was the pith and core of the contract. Therefore, withdrawing the tax exemption impaired the contract. *See The Piqua Branch of the State Bank of Ohio v. Knoop*, 57 US (16 How) 369, 14 L Ed 977 (1853) (tax exemption granted in legislation providing for corporate charter for banks not repealable); *Gordon v. The Appeal Tax Court*, 44 US (3 How) 133, 11 L Ed 529 (1845) (same).

The legislation here is not sufficiently like a corporate charter to justify the same rule of construction. Perhaps the most significant distinction between charters and the

PERS scheme is the formality of the contract at issue. A charter was an integrated contract between the state and the entities choosing to avail themselves of the benefits and to assume the obligations of the charter legislation. The formal assent required for incorporation under a charter established the four corners of the contract between the state and the corporation.

The contractual nature of the accrual of public retirement benefits was anything but clear when the legislature enacted the 1945 Act. That our precedents indicate that public pensions are now considered to be contractual does not eliminate the lack of clarity in the law concerning public pensions at the time of the 1945 and 1953 legislation. Given that lack of clarity and the lack of formality of the employment contract, there is no justification for treating either the 1945 or 1953 legislature's presumed general intent to contract with employees regarding the accrual of PERS benefits also as an intent to contract with employees for a permanent tax exemption merely because the exemption was enacted as part of the legislation creating the retirement system.

Finally, although I have found no Oregon precedent directly on point factually, a 1979 decision of the Supreme Court of Ohio, *Herrick v. Lindley*, 59 Ohio St 2d 22, 391 NE2d 729 (1979), is apposite. Ohio had adopted a PERS system similar to Oregon's and had also adopted, as part of the same scheme, a provision virtually identical to the pre-1991 version of ORS 237.201 that exempted PERS benefits from Ohio state income tax. The Ohio legislature withdrew the income tax exemption for PERS benefits. The Ohio Supreme Court rejected the retired employees' claim that the statute created "a vested right in [the tax] exemption" that could not later be changed. 391 NE2d at 731. The court held that, although the right to PERS benefits vested, the right to a tax exemption did not.

> "When a legislative body grants a vested right to exemption from taxation, it partially relinquishes its ability to deal with changing fiscal conditions in the future. The power to tax being a fundamental governmental power, its impairment should not be based upon a debatable construction of statutory language. To the contrary, every reasonable doubt should be resolved against such an impairment.

"Applying this standard to R.C. 145.561 and 3307.711, we hold that it was not the intent of the General Assembly to grant appellees a vested right to receive their pensions exempt from state taxation. It is reasonable to assume that if such had been the desire of the legislative body, it could have provided for the vesting of the tax exemptions by appropriate language in these sections." *Id.* at 733 (citations omitted).

If the Oregon legislature had intended to create a contractual right to a tax exemption, it would have expressed its intent clearly and unambiguously so as to leave no room for doubt. The wording might well be similar to that used by the 1929 legislature in enacting ORS 656.634.[4]

In sum, the dispositive question is whether the 1945, 1953, or 1969 legislature intended to prevent future legislatures and/or the voters from subjecting PERS benefits to taxation. As stated, the express language of the statute is crystal clear, insofar as the income tax exemption itself is concerned. But it is anything but clear that the legislature intended to bind the hands of future legislatures in such a substantial way. A conclusion that the state, by contract, has promised a timeless tax exemption for any class of citizens or property erodes in a serious way the principle that generally "[a] legislature cannot limit the power of amendment of a subsequent legislature, either as to the extent or manner of its exercise." 1A Sands, Sutherland Statutory Construction 107, § 22.07 (4th ed 1972). Further, such a conclusion would thwart, in part, the reserved right of the people to initiate

---

[4] The legislature knows how to enact such statutes. *See* Or Laws 1929, ch 172 (at issue in *Eckles v. States of Oregon,* 306 Or 380, 392-93, 760 P2d 846 (1988), *appeal dismissed* 490 US 1032 (1989)). In creating a workers' compensation trust fund intended to be beyond legislative reach, the act provided:

"The state of Oregon hereby does declare that the industrial accident fund created by the workmen's compensation act of Oregon, being chapter 112, General Laws of Oregon, 1913, as amended by various sessions of the legislature thereafter, be and the same is a trust fund for the uses and purposes declared in said act as so amended, and no other, and that the contributions to the said fund heretofore made by the state of Oregon have become an integral part of said fund and have either been expended or allocated to the catastrophe fund, rehabilitation fund or segregated accident fund, and the state of Oregon hereby does declare that it has no proprietary interest in said fund or in the contributions thereto heretofore made by said state, and hereby does disclaim any right to reclaim said contributions or any part thereof for its own use, and hereby does waive any such right of reclamation, if any it ever had, in or to any of said fund."

legislation under Article IV, section 1(2), of the Oregon Constitution.

I would hold that the legislature did not clearly and unambiguously express an intention to contract away its power to subject PERS benefits to state income taxes. Because there was no contract for the tax exemption, the 1991 legislature's repeal of the tax exemption did not breach a state contract or impair an obligation of contract in violation of either the Oregon or federal Contract Clause. Further, because retired state employees had no contractual right to the tax exemption, the repeal of that exemption could not result in a taking that would require just compensation under either the state or federal constitution.

I therefore dissent.